1   Daniel H. Qualls, Bar No. 109036
2   Robin G. Workman, Bar No. 145810
    Aviva N. Roller, Bar No. 245415
3   **QUALLS & WORKMAN, LLP**
    244 California Street, Suite 410
4   San Francisco, CA 94111
    Telephone: (415) 782-3660
5   Facsimile: (415) 788-1028

6   *Attorneys for Plaintiffs*

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10  MICHELLE ONYETTE MIKE, PARIS HILL,          )   No.  C 08-5374 PJH
    and MICHAEL WILLIAMS on behalf of           )
11  themselves individually and all others similarly )   **DECLARATION OF ROBIN G.**
    situated,                                    )   **WORKMAN IN SUPPORT OF**
12                                               )   **PLAINTIFFS' APPLICATION AND**
              Plaintiff,                         )   **MEMORANDUM OF POINTS AND**
13                                               )   **AUTHORITIES IN SUPPORT OF**
        vs.                                      )   **APPLICATION FOR ORDER:**
14                                               )
    KAISER PERMANENTE, KAISER                    )     a)  **GRANTING PRELIMINARY**
15  FOUNDATION HEALTH PLAN, INC., aka            )         **APPROVAL OF CLASS**
    KAISER FOUNDATION HEALTH PLAN, and           )         **SETTLEMENT;**
16  DOES 1 through 50, INCLUSIVE                  )
                                                 )     b)  **APPROVING THE FORM AND**
17            Defendant(s)                        )         **MANNER OF NOTICE TO**
                                                 )         **PROVIDE TO THE PROPOSED**
18                                               )         **SETTLEMENT CLASS AND**
                                                 )         **DIRECTING THAT A NEUTRAL**
19                                               )         **THIRD PARTY GIVE SUCH**
                                                 )         **NOTICE TO THE PROPOSED**
20                                               )         **SETTLEMENT CLASS;**
                                                 )
21                                               )     c)  **APPROVING RUST CONSULTING,**
                                                 )         **A NEUTRAL THIRD PARTY, AS**
22                                               )         **CLAIMS ADMINISTRATOR;**
                                                 )
23                                               )     d)  **SETTING A HEARING FOR FINAL**
                                                 )         **APPROVAL OF THE PROPOSED**
24                                               )         **SETTLEMENT AND AWARD OF**
                                                 )         **FEES AND COSTS TO CLASS**
25                                               )         **COUNSEL**
                                                 )
26  _____        )   **DATE:      9/9/09**
                                                     **TIME:      9:00 a.m.**
27                                                   **CTRM:      5**

28

    DECLARATION OF ROBIN G. WORKMAN        -1-              3169\SETTLEMENT\PRELIMINARYAPPDECL.DOC

1    I, Robin G. Workman, declare as follows:

2        1.      I am an attorney at law, duly licensed to practice before all the courts of the State of

3    California, and am a Partner with the Law Firm of Qualls & Workman, L.L.P., attorneys of record

4    herein for Plaintiffs Michelle Onyette Mike, Paris Hill, and Michael Williams.  The following is

5    based on my personal knowledge, and if called upon to do so, I could and would competently

6    testify thereto.

7        2.      This action arises from the overtime pay policies and practices of Kaiser

8    Foundation Health Plan, Inc. ("Kaiser") that Plaintiffs contend violate the requirements of the Fair

9    Labor Standards Act, the California Labor Code, and the Industrial Welfare Commission ("IWC")

10   Wage Orders.  On November 25, 2008, Plaintiffs filed a class action complaint against Kaiser in the

11   United States District Court for the Northern District of California.  The complaint alleges that

12   Kaiser unlawfully denied Plaintiffs and other current and former Kaiser employees who worked as

13   Project Manager Is and IIs (PMI & IIs) on Kaiser's KP HealthConnect project overtime wages,

14   meal periods, and rest periods in violation of various provisions of the California Labor Code, the

15   IWC Wage Orders, California Business & Professions Code section 17200, and the FLSA.  On

16   January 30, 2009, Plaintiffs filed a First Amended Complaint ("FAC") to add a claim for penalties

17   and attorney's fees under the California Labor Code Private Attorneys General Act ("PAGA").

18   Attached hereto as Exhibit A is a true and correct copy of Plaintiffs' First Amended Complaint,

19   filed on January 30, 2009.

20       3.      If this matter proceeded to trial, the common issues presented by Plaintiffs'

21   complaint are:  (a) whether Kaiser implemented and engaged in a systematic practice whereby it

22   unlawfully failed to pay overtime; (b) whether Kaiser implemented and engaged in a systematic

23   practice whereby it failed to provide accurate wage statements to California employees; (c)

24   whether Kaiser implemented and engaged in a systematic practice whereby it failed to pay

25   employees for either meal breaks and/or rest breaks worked as required by law; (d) whether the

26   systematic acts and practices of Kaiser as alleged herein violated, inter alia, applicable provisions

27   of the California Labor Code, including but not limited to, sections 226, 226.7, 510, 512, 515.5,

28   1194, 1198 and 2698, and applicable Industrial Welfare Commission Orders, and California

1   Business & Professions Code § 17200, et seq.

2       4.     On July 9, 2009, the parties participated in mediation before David Rotman, a

3   preeminent mediator of wage and hour class actions, and reached a settlement of the matter, based

4   on Mr. Rotman's experience as a mediator and the uncertainties of protracted litigation. The

5   parties agreed to a settlement with a total value of one million, four hundred thousand dollars

6   ($1,400,000). This settlement provides recovery to 212 class members. Following the mediation,

7   the parties formalized the terms of the settlement in a Stipulation of Settlement And Release

8   Between Plaintiffs And Defendant, a true and correct copy of which is attached hereto as Exhibit

9   B. The Stipulation of Settlement is a product of arms-length negotiations conducted between the

10   parties through the mediation process. Negotiations, while cordial, were adversarial. Only

11   through the assistance of Mr. Rotman were the parties able to reach an agreement. The terms of

12   the Stipulation of Settlement do not provide a basis to doubt its fairness. The amount of payment

13   for Plaintiffs and class member claims are determined by the same weeks worked formula. In

14   Class Counsel's opinion and experience, the settlement payout is fair and reasonable. Class

15   members are given 30 days, which Class Counsel believes is a reasonable amount of time, to

16   determine whether to opt out, object, and/or to file claims.

17       5.     Under the terms to which the Parties agreed, Kaiser will make a payment of One

18   Million, Four Hundred Thousand Dollars ($1.4 million) in full discharge of all claims asserted in

19   this action on a claims-made basis ("Gross Fund Value"), without a reversion to Kaiser except for

20   payment of employer-side payroll taxes. This sum is inclusive of all claims of the Settlement

21   Class members, as well as Class Counsels' attorneys' fees and costs, incentive awards for the

22   Plaintiffs, the cost of class notice and claims administration.

23       6.     This is a fair result for the members of the Settlement Class. Liability in this case

24   was uncertain because Kaiser would argue that some or all of the Class Members may have been

25   exempt from certain pay requirements applicable to nonexempt employees. Some courts have

26   found exemptions to apply in cases involving similar facts.

27       7.     Project Manager Is and IIs ("PMs") are computer software employees who

28   schedule and provide assistance and training to other Kaiser employees with regard to how and in

1  what way to use the Kaiser software called the HealthConnect Program ("HealthConnect").

2  Through the discovery process and my investigation, I learned that HealthConnect is a multi-

3  billion-dollar system-wide Kaiser initiative focused on integrating a common software program

4  for all Kaiser regions and facilities. When Kaiser decides to install the HealthConnect software

5  program in a particular facility, Kaiser deploys teams of employees to train other Kaiser

6  employees on how and in what way they must operate the HealthConnect computer software.

7  PMs are among the employees deployed.

8       8.     My case investigation further revealed that all Kaiser employees who have any

9  contact with Kaiser members (the patients) must know how to use the software. The PMs are the

10  employees who schedule the training for all the employees at all the facilities. This entails not

11  only scheduling the employees to participate in the training, but also making sure all of those

12  predominantly responsible for leading the training are also properly scheduled to ensure the

13  training sessions contain an appropriate number of trainers and participants. This training occurs

14  during normal business hours, after hours for evening "Dress Rehearsals," and at events called

15  "Lunch and Learns." Although in theory Kaiser intended PMs to handle the scheduling, given the

16  nature of providing training for such a large number of employees, often PMs themselves provide

17  the training to the employees.

18       9.     My investigation further revealed that given its massive scale, the training

19  proceeded in a regimented fashion. First, Kaiser identified the dates on which a given facility

20  would switch over to the new computer software. This date is called the "Go-Live" date. Once

21  Kaiser identified the "Go-Live" date, then it set the other phases of preparation. Three to four

22  months prior to the "Go-Live," Kaiser began the "deployment" phase. This phase entailed

23  preparing the given facility for the changeover.

24       10.     Through my investigation, I also learned that immediately prior to the scheduled

25  "Go-Live" date, everyone engaged in "Technical Dress Rehearsals." Kaiser scheduled the dress

26  rehearsals to assure everything was in place for the "Go-Live." The "Dress Rehearsals" often

27  occurred at night, between 5:30 p.m. and 8:00 p.m. The "Go-Live" period itself lasted one month.

28  Following the "Go-Live" transition, facilities always needed technical support. PMs both

1　provided support and scheduled both technical people and employees for needed follow-up

2　training sessions. As many of the facilities were hospitals, sessions ran around the clock. Also to

3　accommodate the business of running hospitals, many of the training sessions occurred during

4　lunch, called "Lunch and Learns." In addition to all of the clerical work required to assure that

5　everyone receives notice of the training sessions, PMs also had to assure more mundane matters,

6　such as conference room availability, that everyone received the proper training materials, and that

7　lunch arrived on time.

8　　　　11.　　Plaintiffs contend that Kaiser violated California and Federal wage and hour laws

9　and that the Action is appropriate for class certification on the basis that the Plaintiffs' claims meet

10　the requisites for class certification. Without admitting that class certification is proper, Kaiser

11　stipulated that a class of PMIs and IIs in California may be certified for settlement purposes only.

12　The Parties agree that certification for settlement purposes is not an admission that class

13　certification would be proper if the class certification issue were litigated. Further, this agreement

14　is not admissible in this or any other proceeding as evidence that the Class could be certified

15　absent a settlement. Solely for purposes of settling the lawsuit, the Parties stipulate and agree that

16　the requisites for establishing class certification with respect to the Class, as defined above, were

17　and are met.

18　　　　12.　　My firm conducted a thorough investigation into the facts of the class action. We

19　diligently evaluated the Class Members' claims against Kaiser. We conducted formal discovery

20　by propounding inspection demands and interrogatories. Prior to mediation, counsel for Kaiser

21　provided my firm with access to Class Member data, including data reflecting the weeks worked

22　by the Class Members and relevant salary information for the positions at issue. We also surveyed

23　the class members. Based on the foregoing data and my independent investigation and evaluation,

24　we believe that the settlement with Kaiser for the consideration and on the terms set forth in this

25　Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the Class in

26　light of all known facts and circumstances, including the risk of significant delay, defenses

27　asserted by Kaiser, and numerous potential appellate issues.

28　　　　13.　　Attached hereto as Exhibit C is a true and correct copy of Plaintiff Mike's First Set

DECLARATION OF ROBIN G. WORKMAN　　　-5-　　　3169\SETTLEMENT\PRELIMINARYAPPDECL.DOC

1   of Inspection Demands to Kaiser, propounded on March 16, 2009.

2       14.    Attached hereto as Exhibit D is a true and correct copy of Plaintiff Hill's First Set

3   of Inspection Demands to Kaiser, propounded on March 16, 2009.

4       15.    Attached hereto as Exhibit E is a true and correct copy of Plaintiff Williams' First

5   Set of Inspection Demands to Kaiser, propounded on March 16, 2009.

6       16.    Attached hereto as Exhibit F is a true and correct copy of Plaintiff Mike's First Set

7   of Interrogatories to Kaiser, propounded on March 16, 2009.

8       17.    Kaiser provided putative class member records and data in response to Plaintiffs'

9   formal and informal discovery requests, including job titles, job descriptions, employment related

10  documents, period of employment, rate of pay, work schedules, and work week records. Among

11  this group was a dataset called NIKU, from Kaiser's internal timekeeping system, which consists

12  of time records depicting hours worked for both PMIs and IIs. The NIKU records depict that

13  putative class members worked overtime hours just 38% of the time during the class period.

14      18.    In turn, Plaintiffs turned over Kaiser's data to Plaintiffs' wage and hour damage

15  calculation expert, Class Action Damage Analysis ("CADA"). At Plaintiffs' request, CADA

16  calculated damages for the putative class. CADA used the mean hourly rate of $30.78 to calculate

17  damages, which corresponds to a mean overtime hourly rate of $46.17 per hour. The class period

18  encompasses 13,591 workweeks. One and one-half (1.5) hours per workweek of unpaid overtime

19  for class members equals $941,176.25. Each missed meal break per workweek for class members

20  equals $418,330.98. Each missed rest break per workweek for class members equals $418,330.98.

21      19.    As a result of CADA's damage analysis, Kaiser was subject to claims totaling

22  $1,777,838.71 for the class period for the combination of unpaid overtime, missed meal breaks,

23  and missed rest breaks that were susceptible to records-based proof. The settlement of

24  $1,400,000, before deductions, represents 78% of the subject claims. After deduction of

25  attorneys' fees and costs payment of $350,000, claims administration costs of $25,000, and the

26  Class Representatives' incentive awards of $30,000, the Net Fund Value will equal $995,000,

27  which is nearly 56% of a full recovery, assuming Plaintiffs could prove these amounts at trial.

28      20.    In evaluating the risks of litigation, I considered Kaiser's assertion of both the

1   administrative and executive exemptions.  Kaiser asserted the one or both exemptions applied to

2   all or some of the members of the class.  I took into account that courts have held that the

3   administrative exemption applied in cases addressing similar positions.  I also took into account

4   the fact that courts, such as that in <u>Dunbar v. Albertson's, Inc.</u>, 141 Cal. App. 4th 1422, 1431-32

5   (2006), denied class certification to a class of employees who claimed that the defendant denied

6   them overtime pay because the question of whether the executive exemption applied needed to be

7   individually determined for each class member, meaning that common issues did not predominate.

8   Kaiser would have certainly argued here in opposing class certification that individual issues

9   predominated because the applicability of the administrative and executive exemptions would

10  have to be separately determined for each Class Member based on his or her individual

11  experience.  In evaluating the appropriateness of the settlement, I took into account the risk that, if

12  the parties did not settle this action, Plaintiffs would be unable to obtain class certification and

13  thereby not recover on behalf of any Kaiser employees other than themselves.  While other cases

14  have approved class certification in overtime wage claims, class certification in this action would

15  have been hotly disputed and was by no means a foregone conclusion.

16        21.     Plaintiffs additionally faced the risk posed by the California Supreme Court's

17  pending opinion in <u>Brinker Restaurant Corp., et al. v. Superior Court</u>, 196 P.3d 216, 2008 Cal.

18  LEXIS 12467 (October 22, 2008).  Prior to <u>Brinker</u>, this Court adopted the position of the

19  California Court of Appeal in <u>Cicairos v. Summit Logistics</u>, 133 Cal. App. 4th 949 (2005), and

20  found that employers "must do something affirmative to provide a meal period, and may not

21  merely assume that such breaks are taken."  <u>Perez v. Safety-Kleen Systems, Inc.</u>, 2007 U.S. Dist.

22  LEXIS 48308, *20-23 (N.D. Cal. June 27, 2007).  Following the <u>Brinker</u> opinion from the Court

23  of Appeal and several other California District Court opinions, this Court adopted the emerging

24  interpretation of California's rest and meal period requirements and shifted its view accordingly,

25  no longer finding <u>Cicairos</u> generally applicable.  <u>Perez v. Safety-Kleen Systems, Inc.</u>, 253 F.R.D.

26  508, 512-515 (N.D. Cal. 2008).  Although Plaintiffs believe they would be able answer the "why"

27  questions posed by the various courts, Plaintiffs recognize the uncertainty surrounding this issue

28  that will not be resolved until the California Supreme Court decides the issues presented in

1   Brinker.

2       22.    All three Class Representatives assisted in the prosecution of Plaintiffs' case,

3   provided relevant documents to my firm in support of class claims, and timely responded to

4   numerous inquiries from my firm via telephone and e-mail in order to complete the necessary

5   investigation into their claims.  This asssitance was invaluable and allowed me to have an

6   understanding of the duties performed by the class members and the Kaiser's expectations for the

7   class members.

8       23.    Based on the data produced and analyzed and the independent investigation and

9   evaluation my firm performed, I am of the opinion that the settlement with Kaiser for the

10  consideration and on the terms set forth in the Stipulation of Settlement is fair, reasonable, and

11  adequate and is in the best interest of the class in light of all known facts and circumstances,

12  including the risk of significant delay, defenses asserted by Kaiser, and numerous potential

13  appellate issues.  Given the work my firm performed, we possessed sufficient information to make

14  an informed judgment regarding the likelihood of success on the merits and the results that could

15  be obtained through further litigation.

16      24.    Qualls & Workman, LLP is well qualified to evaluate and recommend the proposed

17  class settlement and to act as Class Counsel.  My firm specializes in employment law, including

18  wage and hour class action enforcement.  Between 2005 and the present alone, my partner, Daniel

19  H. Qualls, and I have acted as court-appointed class counsel in the following overtime

20  misclassification and meal and rest period cases, including: Stewart, et. al. v. Toys R Us, San

21  Francisco Superior Court Case No. 318923; Terry v. Cigarettes Cheaper, Inc., Alameda County

22  Superior Court Case No. 835526-3; Walsh v. IKON Office Solutions, Inc., San Francisco Superior

23  Court Case No. CGC 04 429428; Dudash v. Lowe's Companies Inc., USDC, Central District of

24  California, Case No. CV 04-10067 GAF (RZx); Dell'Orfano v. IKON Office Solutions, Inc.,

25  USDC Middle District Of Georgia Case No. 5:05-CV-00245.  Lopez v. Marketwire, Inc., San

26  Francisco Superior Court Case No. 06-457732; Righetti v. Insidetrack, Inc., San Francisco

27  Superior Court Case No. 06-457546; Garnica v. Wells Fargo Bank, NA, et. al., Santa Barbara

28  County Case No. D1264187; Dellmore v. Toys 'R' US, Inc., et. al., Alameda County Superior

1  Court Case No. RG07306616; Tate, et. al. v. Kaiser Permanente, et. al., Alameda County Superior

2  Court Case No. RG07318416; Ralston v. US-Reports, Inc., Alameda County Superior Court, Case

3  No. RG07328773; Louie v. Kaiser Permanente, et. al., USDC Southern District of California,

4  Case No. 08CV0795; Bufil v. Dollar Financial Group, Inc., San Francisco Superior Court Case

5  No. CGC-06-456053; and Wright v. Centerplate, Inc., Alameda County Superior Court Case No.

6  RG07356589.

7      25.     The Settlement excerpts from the class former Kaiser employee, Kimberly Wallace.

8  Ms. Wallace's exclusion was a condition of settlement as Kaiser terminated her for fraud on

9  August 16, 2006.

10     I declare under penalty of perjury that the foregoing is true and correct and that this

11  Declaration was executed on August 25, 2009 in San Francisco, California.

13                    ROBIN G. WORKMAN

# EXHIBIT A

1  Daniel H. Qualls, Bar No. 109036
2  Robin G. Workman, Bar No. 145810
   Aviva N. Roller, Bar No. 245415
3  **QUALLS & WORKMAN, LLP**
   244 California Street, Suite 410
4  San Francisco, CA 94111
   Telephone: (415) 782-3660
5  Facsimile: (415) 788-1028

6  *Attorneys for Plaintiffs*

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10  MICHELLE ONYETTE MIKE, PARIS HILL,      )   No. C 08-5374 PJH
    and MICHAEL WILLIAMS on behalf of       )
11  themselves individually and all others similarly  )   **FIRST AMENDED**
    situated,                                )   **CLASS ACTION COMPLAINT**
12                                           )
            Plaintiff,                       )
13                                           )
        vs.                                  )
14                                           )
    KAISER PERMANENTE, KAISER                )
15  FOUNDATION HEALTH PLAN, INC., aka        )
    KAISER FOUNDATION HEALTH PLAN, and       )
16  DOES 1 through 50, INCLUSIVE             )
                                             )
17          Defendant(s)                     )
    _____      )

18      Plaintiffs Michelle O. Mike, Paris Hill, and Michael Williams ("Plaintiffs") by their

19  attorneys, bring this action on behalf of themselves and all other persons similarly situated and

20  hereby alleges as follows:

21                      **JURISDICTION AND VENUE**

22      1.    This Court has jurisdiction to hear this action pursuant to 28 U.S.C. section 1331

23  because this action arises under numerous laws of the United States, including the Fair Labor

24  Standards Act, 29 U.S.C. § 219, et. seq.,  In addition, because the claims stated herein arise from

25  the same or substantially similar facts and circumstances and derive from a common nucleus of

26  operative facts, the Court has pendant jurisdiction to hear all claims presented or to be presented in

27  this action pursuant to 28 U.S.C. section 1367.

28

CLASS ACTION COMPLAINT               -1-            3169\PLEADINGS\CLASSACTIONCOMPLAINT.DOC

1    2.     The claims involved in this action arose in the Northern District of California, in

2    that a significant part of events described herein occurred in this judicial district and Defendants,

3    corporations, reside in this judicial district.  Venue is accordingly proper in this Court pursuant to

4    28 U.S.C. section 1391.

5                                          **PARTIES**

6    3.     Plaintiffs are California residents and natural persons.

7    4.     Plaintiffs are informed and believe and on that basis allege that Defendant Kaiser

8    Permanente, Kaiser Foundation Health Plan, Inc., aka Kaiser Foundation Health Plan, ("Kaiser")

9    is and at all times material herein mentioned was, a corporation doing business in the State of

10   California and within this judicial district.  Defendant Kaiser also conducts business in eight (8)

11   other states in the United States and in the District of Columbia and is engaged in commerce

12   within the meaning of the Fair Labor Standards Act by regularly and recurrently receiving or

13   transmitting interstate communications between these states and the District of Columbia.

14   5.     The names and capacities of Defendants sued herein under California Code of Civil

15   Procedure § 474 as Does 1 through 50, inclusive, are presently not known to Plaintiff, who

16   therefore sues these Defendants by such fictitious names.  Plaintiff will seek to amend this

17   Complaint and include these Doe Defendants' names and capacities when they are ascertained.

18   Each of the fictitiously named Defendants is responsible in some manner for the conduct alleged

19   herein and for the injuries suffered by Plaintiff, the members of the Class and the general public.

20                          **FACTS APPLICABLE TO CLAIM STATED**

21   6.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing

22   paragraphs as if fully set forth herein.

23   7.     This action alleges that Kaiser failed to pay non-exempt employees overtime wages

24   in violation of the Fair Labor Standards Act of 1947 (FLSA) and applicable implementing

25   regulations.

26   8.     This action seeks relief for unremedied violations of Federal and State law,

27   including, inter alia; damages, and/or restitution, as appropriate, to Plaintiffs and similarly situated

28   employees, who have not been paid the appropriate rate of pay for overtime worked, who have not

CLASS ACTION COMPLAINT                    -2-              3169\PLEADINGS\CLASSACTIONCOMPLAINT.DOC

1   received overtime pay for overtime worked, who have not received compensation for labor

2   provided without rest or meal period breaks, and who have failed to receive accurate wage

3   statements.

4       9.    Plaintiffs bring this action in their individual capacity, and on behalf of all others

5   similarly situated. Plaintiffs are employed by Kaiser in California as Project Managers I and II

6   ("PMs"). Plaintiffs hold these positions for Kaiser in California providing assistance to Kaiser

7   personnel and other tasks in connection with Kaiser's HealthConnect program. PMs' duties and

8   tasks performed by Plaintiffs, and all others similarly situated, were such that Plaintiffs and class

9   members were non-exempt employees and entitled to overtime compensation. As a result,

10  Defendants paid Plaintiffs wages significantly less than required by law. In addition, Defendants

11  failed to provide Plaintiffs, and all other similarly situated Kaiser California employees, with off-

12  duty rest and meal period breaks, and failed to provide Plaintiffs, and all other similarly situated

13  California employees with accurate statements of wages.

14      10.    Kaiser is, and at all relevant times was, an employer under the FLSA and California

15  law.

16      11.    This action seeks relief on behalf of a class of persons defined as follows:

17          Persons employed by Kaiser in California as PMs providing services in connection
    with Kaiser's HealthConnect program for the four years preceding the filing of this
18          Complaint ("the Class").

19      12.    The Class is sufficiently numerous, since it is estimated to include several hundred

20  or more Kaiser employees geographically dispersed, the joinder of whom in one action is

21  impracticable, and the disposition of whose claims in a class action will provide substantial

22  benefits to both the parties and the Court.

23      13.    There is a well-defined community of interest in the questions of law and fact

24  involved affecting the parties to be represented. The questions of law and fact common to the

25  Class predominate over questions that may affect individual class members, including but not

26  limited to the following:

27          (a)    Whether Kaiser implemented and engaged in a systematic practice whereby

28  it unlawfully failed to pay overtime;

CLASS ACTION COMPLAINT        -3-        3169\PLEADINGS\CLASSACTIONCOMPLAINT.DOC

   (b)  Whether Kaiser implemented and engaged in a systematic practice whereby it failed to provide accurate wage statements to California employees;

   (c)  Whether Kaiser implemented and engaged in a systematic practice whereby it failed to pay employees for either meal breaks and/or rest breaks worked as required by law;

   (d)  Whether the systematic acts and practices of Kaiser as alleged herein violated, inter alia, applicable provisions of the California Labor Code, including but not limited to, sections 226, 226.7, 510, 512, 515.5, 1194, 1198 and 2698, and applicable Industrial Welfare Commission Orders, and California Business & Professions Code § 17200, et seq.

  14.  Because Plaintiffs worked overtime on a daily and weekly basis, were routinely required to work through both meal and rest breaks on a daily basis, for which Plaintiffs were not properly compensated, and failed to receive timely and accurate wage statements, Plaintiffs are asserting claims that are typical of the claims of the Class.

  15.  Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflict of interest that would be antagonistic to those of the other members of the Class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action wage and hour violations.

  16.  Because Plaintiffs and the members of the Class have all similarly suffered irreparable harm and damages as a result of Kaiser's unlawful and wrongful conduct, including but not limited to Kaiser's systematic failure to pay overtime wages, systematic failure to provide for rest and meal period breaks, and systematic failure to pay for meal and break periods worked class treatment is especially appropriate. Because the hours worked by Kaiser employees and class members follow common patterns, this action will provide substantial benefits to both the Class and Kaiser. Absent this action, Kaiser's unlawful conduct will continue unremedied and uncorrected.

///

///

///

///

## CLAIMS PRESENTED

### FIRST CAUSE OF ACTION
**(Failure To Pay Overtime Wages In Violation Of The Fair
Labor Standards Act Of 1947, 29 U.S.C. sec. 207 et. seq.)**

17.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

18.     During all relevant periods, Kaiser required and allowed Plaintiffs and similarly situated Kaiser employees to work shifts in excess of forty hours per week.

19.     Kaiser is engaged in communication, business, and transmission between California, nine other states in the United States, and the District of Columbia, and is, therefore, engaged in commerce within the meaning of 29 U.S.C. § 203(b).

20.     During all relevant periods, the FLSA required that all work performed by a non-exempt employee in excess of forty hours in any work-week be paid overtime wages based on their regular rate of pay.  Kaiser willfully failed to compensate Plaintiffs and similarly situated Kaiser employees for overtime hours they worked in excess of forty hours in any work-week, by payment of overtime wages.  As a result, Kaiser failed to pay Plaintiffs and similarly situated Kaiser employees earned overtime wages.  Plaintiffs and similarly situated Kaiser employees are entitled to recover their unpaid overtime compensation, liquidated damages and penalties arising therefrom.

21.     Plaintiffs and the similarly situated Kaiser employees are therefore entitled to the relief requested below.

### SECOND CAUSE OF ACTION
**Unlawful Failure To Pay Overtime Wages
(Labor Code §§ 226, 510, 515.5, 558, 1194, 1198 et seq.; Wage Order No. 4-2001)**

22.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

23.     During all relevant periods, Kaiser required Plaintiffs and class members to work shifts in excess of eight hours per day, and to work in excess of forty hours per week.

1      24.     During all relevant periods, both the California Labor Code and the pertinent wage

2   orders required that all work performed by an employee in excess of eight hours in any workday,

3   on the seventh day of work in any workweek, or in excess of forty hours in any workweek be

4   compensated at one and one-half times the employee's regular rate of pay.  Kaiser failed to

5   compensate Plaintiffs and class members for overtime hours they worked in excess of eight hours

6   in any workday or in excess of forty hours in any workweek, at one and one-half times a rate of

7   pay, based upon their regular rate of pay.  As a result, Kaiser failed to pay Plaintiffs and class

8   members earned overtime wages and failed to provide Plaintiffs and class members itemized

9   statements as required by California Labor Code Section 226.  Plaintiffs and class members are

10  entitled to recover their unpaid overtime compensation and liquidated damages arising there from.

11     25.     Plaintiffs and the other members of the class members are therefore entitled to the

12  relief requested below.

### THIRD CAUSE OF ACTION
**Failure To Provide Rest And Meal Period Breaks And Compensation**
**(California Labor Code Sections 226.7, 512)**

15     26.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing

16  paragraphs as if fully set forth herein.

17     27.     During all relevant periods, Defendants illegally and unlawfully failed to provide

18  Plaintiffs and class members meal periods and rest periods as required by California law.

19     28.     During all relevant periods, both the California Labor Code and the pertinent wage

20  orders required that Plaintiffs and class members be compensated for the missed meal periods and

21  rest periods.  Defendants failed to compensate Plaintiffs and class members for meal periods and

22  rest periods worked as required by law.  Plaintiffs and class members are entitled to recover their

23  unpaid compensation and penalties arising there from.

24     29.     By unlawfully failing to provide meal and rest periods to Plaintiffs and class

25  members and in failing to properly compensate Plaintiff and class members for the meal periods

26  and break periods they worked as alleged herein, Defendants acted in willful and conscious

27  disregard of Plaintiffs' and class members' statutory and regulatory right to lunch and rest periods

28  and overtime compensation.

30.     Plaintiffs and the other members of the Class are therefore entitled to the relief requested below.

### FOURTH CAUSE OF ACTION
#### Unfair Competition
#### (Bus. & Prof. Code §§ 17200-17208)

31.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

32.     Defendants' failure to pay overtime and provide meal and rest periods, as alleged above, constitutes unlawful and/or unfair and/or fraudulent activity prohibited by California Business and Professions Code § 17200.

33.     As a result of its unlawful and/or unfair and/or fraudulent acts, Kaiser has reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiffs and the Class. The Court should enjoin this activity and make Kaiser disgorge these ill-gotten gains and restore to Plaintiffs and the Class the wrongfully withheld overtime wages and meal and rest period compensation, to provide California class members restitution for the withholding, and for delay in receiving the overtime wages and compensation due, pursuant to Business and Professions Code § 17203.

34.     Accordingly, Plaintiffs and the California Class respectfully request that the Court award judgment and relief in their favor to provide restitution and other types of equitable relief.

### FIFTH CAUSE OF ACTION

#### (Labor Code Private Attorneys General Act of 2004: Labor Code Sec. 2698)

35.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

36.     The policies, acts and practices heretofore described were and are an unlawful business act or practice because Defendant's failure to pay non-exempt employees overtime wages violates applicable Labor Code sections and gives rise to statutory penalties as a result of such conduct, including but not limited to penalties as provided by Labor Code §§ 226, 226.7, 510, 512, 515.5, 558, 1194, 1198 and 2698, and applicable Industrial Welfare Commission Orders. Plaintiffs, as aggrieved employees, hereby seek recovery of civil penalties as prescribed by the

1   Labor Code Private Attorney General Act of 2004 on behalf of themselves and other current and

2   former employees of Defendant against whom one or more of the violations of the Labor Code

3   was committed.

4        37.    On December 16, 2008, Plaintiffs gave written notice by certified mail to the

5   California Labor and Workforce Development Agency and Kaiser Foundation Health Plan of

6   Labor Code violations as prescribed by California Labor Code section 2699.3.  On January 9,

7   2009, the LWDA sent Plaintiffs a letter declining to investigate the allegations set forth in

8   Plaintiffs' December 16, 2009, letter or written notice of cure by Kaiser as prescribed by

9   California Labor Code section 2699.3.

10                          **PRAYER FOR RELIEF**

11        WHEREFORE Plaintiffs pray for judgment and relief as follows:

12        1.    An order that the action may proceed as a collective action under Section 216(b) of

13   the FLSA;

14        2.    Compensatory and statutory damages, penalties and restitution, as appropriate and

15   available, in an amount to be proven at trial based on, inter alia, the unpaid balance of overtime

16   compensation Kaiser owes and the amounts Kaiser owes for rest and meal period violations;

17        3.    For liquidated damages as appropriate and available due to Kaiser's willful failure

18   to pay wages due;

19        4.    Exemplary and punitive damages, as appropriate and available under each cause of

20   action, pursuant to California Civil Code § 3294;

21        5.    An order enjoining Kaiser from pursuing the policies, acts, and practices

22   complained of herein;

23        6.    Reasonable attorneys' fees pursuant to the Fair Labor Standards Act of 1947 and

24   California Labor Code § 1194;

25        7.    Costs of this suit;

26        8.    Pre- and post-judgment interest; and,

27   ///

28   ///

1      9.      Such other and further relief as the Court deems just and proper.

2

3    DATE:  January 30, 2009                          QUALLS & WORKMAN, L.L.P.

4

5                                             By:
                                                  Robin G. Workman
6                                                 Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

1   Daniel H. Qualls (SBN 109036)
    dan@qualls-workman.com
2   Robin G. Workman (SBN 145810)
    robin1@qualls-workman.com
3   QUALLS & WORKMAN, LLP
    244 California Street, Suite 410
4   San Francisco, CA  94111
    Telephone:  (415) 782.3660
5   Facsimile: (415) 788.1028

6   Attorneys for Plaintiffs
    MICHELLE ONYETTE MIKE, PARIS HILL, AND MICHAEL WILLIAMS
7
    Thomas R. Kaufman (SBN 177936)
8   tkaufman@seyfarth.com
    Lorraine H. O'Hara (SBN 170153)
9   lohara@seyfarth.com
    SEYFARTH SHAW LLP
10  2029 Century Park East, Suite 3300
    Los Angeles, California 90067
11  Telephone: (310) 277-7200
    Facsimile: (310) 201-5219
12
    Attorneys for Defendant
13  KAISER FOUNDATION HEALTH PLAN, INC.

14                      UNITED STATES DISTRICT COURT

15                     NORTHERN DISTRICT OF CALIFORNIA

16

17

18  MICHELLE ONYETTE MIKE, PARIS HILL,  )   Case No.  C 08-05374 PJH
    and MICHAEL WILLIAMS on behalf of    )
    themselves and individually and all others )   PARTIES' STIPULATION OF
19  similarly stated,                    )   SETTLEMENT AND RELEASE
                                         )   BETWEEN PLAINTIFFS AND
20            Plaintiffs,                )   DEFENDANT
                                         )
21       v.                             )
                                         )
22  KAISER PERMANENTE, KAISER           )
    FOUNDATION HEALTH PLAN, INC., aka    )
23  KAISER FOUNDATION HEALTH PLAN, and)
    DOES 1 through 100, INCLUSIVE        )
24                                       )
              Defendant(s).              )
25  _____ )

26

27

28

PARTIES' STIPULATION OF SETTLEMENT AND RELEASE BETWEEN PLAINTIFFS AND DEFENDANT

1       This Stipulation of Settlement and Release ("Stipulation of Settlement" or "Settlement

2   Agreement") is made and entered into by and between Plaintiffs Michelle Mike, Paris Hill, and

3   Michael Williams (collectively, "Plaintiffs" or "Class Representatives") and Defendant Kaiser

4   Foundation Health Plan, Inc. ("Defendant"), and is subject to the terms and conditions hereof

5   and the approval of the Court.  Plaintiffs and Defendant are referenced collectively herein as "the

6   Parties."

7   **BACKGROUND AND RECITALS**

8       1.    On or about November 25, 2008, Plaintiffs filed a class action complaint in the

9   United States District Court, Case No. C 08-5374 PJH, captioned *Mike v. Kaiser Permanente*.

10  On or about January 30, 2009, the complaint was amended to add a claim for penalties under

11  California's Private Attorney General Act ("PAGA").  The complaint alleged that Plaintiffs and

12  other former employees of Kaiser Foundation Health Plan, Inc. were unlawfully denied overtime

13  wages, meal periods and rest periods.  The complaint sought recovery of overtime wages, meal

14  period pay, rest period pay, relief for the failure to comply with the itemized employee wage

15  statement provisions of Labor Code section 226(b), Labor Code section 203 waiting time

16  penalties, PAGA penalties, and attorneys' fees and costs from Defendant.

17      2.    For purposes of this Settlement Agreement, the "Settlement Class" consists of all

18  class members who fail to opt out of this Settlement Agreement.  "Settlement Class Members"

19  are:

20          "All persons employed by Kaiser Foundation Health Plan, Inc. or
            Kaiser Foundation Hospitals in California as Project Managers Is

21          and/or IIs providing services in connection with Kaiser's KP
            HealthConnect program for the time period November 25, 2004

22          through July 9, 2009 except former employee Kimberly Wallace."

23      3.    On July 9, 2009, the Parties participated in a mediation before mediator David

24  Rotman that resulted in a settlement of the Lawsuit, subject to court approval.  The parties'

25  counsel signed a Memorandum of Understanding, and are now entering into a more detailed,

26  formalized settlement agreement to submit to the Court for approval.

27      4.    For purposes of settling the Lawsuit, the Parties conditionally stipulate and agree

28  that the requisites for establishing class certification with respect to the Settlement Class have

- 1 -

1  been met and are met, and therefore, stipulate to class certification.  More specifically, the

2  Parties conditionally stipulate and agree that for the Settlement Class:

3          a.     The number of Class Members is so numerous as to make it impracticable

4  to join all Class Members.

5          b.     There is an ascertainable class.

6          c.     There are common questions of law and fact.

7          d.     Plaintiffs' claims are typical of the claims of the members of the

8  Settlement Class.

9          e.     Qualls & Workman, LLP should be deemed "Class Counsel" and will

10  fairly and adequately protect the interests of the Settlement Class.

11          f.     The prosecution of separate actions by individual members of the

12  Settlement Class would create the risk of inconsistent or varying adjudications, which would

13  establish incompatible standards of conduct.

14          g.     Questions of law and fact common to the members of the Settlement Class

15  predominate over questions affecting individual members in the Settlement Class and a class

16  action is superior to other available means for the fair and efficient adjudication of the

17  controversy.

18      5.     Defendant denies any liability or wrongdoing of any kind associated with the

19  claims alleged in the complaint and further denies that, for any purpose other than settling the

20  Lawsuit, this action is appropriate for class treatment.  Defendant contends, among other things,

21  that it has complied at all times with the Fair Labor Standards Act ("FLSA"), the California

22  Labor Code, and all applicable California and federal law.

23      6.     Plaintiffs believe they have filed a meritorious action and that class certification is

24  appropriate.  Plaintiffs contend that Defendant violated both federal and state wage and hour

25  laws and that this case is appropriate for class certification as the requisites for class certification

26  are satisfied in this case.

27      7.     It is the desire of the Parties to fully, finally, and forever settle, compromise, and

28  discharge all disputes and claims which exist between them arising from or related to the

- 2 -

1  Lawsuit. In order to achieve a full and complete release of Defendant (and the Releasees as

2  defined in Paragraph 8) of such disputes and claims, each Class Member (which includes any

3  legal heirs and/or successors-in-interest of each Class Member who receives Notice), through

4  execution of the Stipulation and Settlement by the Class Representative, acknowledges that this

5  Stipulation of Settlement is intended to include in its effect all claims arising from or related to

6  the Lawsuit, including all claims set forth in Paragraph 19 of this Stipulation of Settlement,

7  which each Class Member does not know or suspect to exist in his or her favor against

8  Defendant during the Settlement Period.

9       8.     It is the intention of the Parties that this Stipulation of Settlement shall constitute a

10  full and complete settlement and release of all claims arising from the factual allegations

11  contained in the Lawsuit and arising any time up to final approval of the settlement, including,

12  without limitation, any and all claims relating to said factual allegations under the FLSA, the

13  California Labor Code or Business & Professions Code (including section 17200), claims for

14  restitution and other equitable relief, liquidated damages, punitive damages, waiting time

15  penalties, PAGA penalties, penalties of any nature whatsoever, attorneys' fees, and any other

16  benefit claimed on account of the allegations asserted in the Class Action complaint, which

17  release shall include in its effect Defendant, and each of its present and former affiliates

18  (including Kaiser Foundation Hospitals), parent companies, subsidiaries, shareholders, officers,

19  partners, directors, employees, agents, attorneys, insurers, predecessors, representatives,

20  accountants, past, present, and future, successors and assigns, and each and all of their respective

21  officers, partners, directors, servants, agents, shareholders, employees, representatives,

22  accountants, insurers, and attorneys, past, present, and future, and all persons acting under, by,

23  through, or in concert with any of them (collectively, the "Releasees").

24  **TERMS OF SETTLEMENT**

25       9.     Establishment of Gross Fund Value. This settlement shall be made on a non-

26  reversionary basis (except as to employer taxes as described below). As to the Settlement Class,

27  Defendant shall pay no more than a sum equal to ONE MILLION FOUR HUNDRED

28  THOUSAND DOLLARS ($1,400,000) (the "Gross Fund Value") to fund the settlement of this

- 3 -

1   action.  Payments by Defendant pursuant to this Settlement Agreement shall settle all pending

2   issues between the Parties, including, but not limited to, all payments of class claims,

3   administration costs, attorneys' fees and costs, and enhancement awards.  Payments of any

4   appropriate and lawfully required employer payroll taxes shall also be drawn from the Gross

5   Fund Value.  The payments are not being made for any other purpose and will not be construed

6   as compensation for purposes of determining eligibility for any health and welfare benefits or

7   unemployment compensation.

8        10.   Calculation of Net Fund Value.  After determination of the final Gross Fund

9   Value, the Net Fund Value ("NFV") for the Settlement Class will constitute the total sum from

10  which members of the respective Settlement Class will be paid after Court-approved attorneys'

11  fees and costs, administration costs, and enhancement awards described herein are subtracted

12  from the Gross Fund Value as described below.

13       11.   Settlement Date:  The settlement embodied in this Stipulation of Settlement shall

14  go into effect upon entry of a final Judgment by the Court approving this Stipulation of

15  Settlement.

16       12.   Settlement Payments and Costs of Administration:

17            a.    Attorneys' Fees and Costs:  In consideration for settling this matter and in

18  exchange for the release of all claims by the Settlement Class, and subject to final approval,

19  Defendant agrees that Class Counsel should be awarded a sum not to exceed one-third (1/3rd) of

20  the Gross Fund Value to compensate and reimburse Class Counsel for all of the work already

21  performed by Class Counsel in this case and all of the work remaining to be performed by Class

22  Counsel in documenting the Settlement, securing Court approval of the Settlement, making sure

23  that the Settlement is fairly administered and implemented, and obtaining dismissal of the action.

24  Class counsel will separately seek recovery of their actual litigation costs.  Should the Court

25  approve a lesser percentage or amount of fees and/or costs, the unapproved portion or portions

26  shall revert to the NFV and will be distributed to Settlement Class members who constitute

27  Qualified Claimants (described below) on a proportional basis relative to the size of their claims,

28  in accordance with other administration and distribution requirements hereunder.

1          b.     Enhancement Awards:  Subject to approval by the Court, Defendant

2    further agrees to pay Plaintiffs an enhancement award not to exceed THIRTY THOUSAND

3    DOLLARS ($30,000), for distribution to Plaintiffs Michelle Mike ($10,000), Paris Hill

4    ($10,000), and Michael Williams ($10,000), the named class representatives, in consideration for

5    serving as Class Representatives.  The enhancement award is in addition to the claim share to

6    which Plaintiffs are entitled along with other claiming Class Members.  Should the Court

7    approve an enhancement award less than that set forth herein, the unapproved portion or portions

8    shall revert to the respective NFV and shall be distributed proportionally to those Settlement

9    Class members who constitute Qualified Claimants (described below) on a proportional basis

10   relative to the size of their claims, in accordance with other administration and distribution

11   requirements hereunder.

12         c.     Calculation of Class Members' Payments:  In consideration for settlement

13   and a release of all claims of the Settlement Class against Defendant, Defendant agrees to pay to

14   each member of each Settlement Class who returns a valid and timely Claim Form ("Qualified

15   Claimant") a share of the respective NFV according to the formula that follows.

16         Each Qualified Claimant's allocation of the NFV will be determined by dividing the NFV

17   by the total number of class workweeks and multiplying that figure by the Qualified Claimant's

18   individual workweek total.  Workweeks will be calculated by dividing the number of payroll

19   work hours a class member recorded in a covered position during the applicable class period(s),

20   dividing that number by 40, and rounding up to the nearest integer.

21         d.     Funding of Settlement:  Within ten (10) business days after final approval

22   by the Court, Defendant will deposit the Gross Fund Value into an interest-bearing account

23   created by the administrator.  Any interest accrued on this account will be distributed to class

24   claimants except that if final approval is reversed on appeal, then Defendant is entitled to prompt

25   return of the principal and all interest accrued.  To the extent that Class Members do not submit a

26   claim for their pro rata share of the NFV that portion of the claims fund shall first be used to pay

27   any employer-side payroll taxes owed on claims, and any further excess shall be redistributed to

28

PARTIES' STIPULATION OF SETTLEMENT AND RELEASE BETWEEN PLAINTIFFS AND DEFENDANT

1    class claimants on a proportional basis.  Defendant shall be responsible for any additional

2    employer taxes in excess of the unclaimed portion of the NFV.

3         e.    Payment Procedure:  So long as the effective date of final approval has

4    occurred, the Claims Administrator may pay all claims, and Court-approved attorney's fees,

5    costs, and enhancement payments immediately after Defendant is required to fund the settlement.

6    The effective date will be the date of final approval if no objections are filed to the settlement.  If

7    objections are filed and overruled, and no appeal is taken of the final approval order, then the

8    effective date of final approval will be sixty-five (65) days after the entry of final approval.  If an

9    appeal is taken from the Court's overruling of objections to the settlement, then the effective date

10   of final approval will be twenty (20) days after the appeal is withdrawn or after an appellate

11   decision affirming the final approval becomes final.  No money will be distributed unless and

12   until the effective date of final approval occurs.

13        f.    Costs of Claims Administrator:  The parties have selected Rust Consulting

14   as Claims Administrator in this action.  Rust Consulting has agreed to perform all necessary class

15   administration duties for a fee estimated to be TWENTY-FIVE THOUSAND DOLLARS

16   ($25,000).  This administration duty shall include without limitation, mailing notices, claim

17   forms and exclusion forms, mailing reminder post-cards to those members of the Class who have

18   not returned a claim form or request for exclusion 20 days prior to the expiration of the claims

19   period, placing a reminder telephone call to Class Members who have not returned a claim form

20   or request for exclusion 10 days prior to the expiration of the claims period, performing

21   necessary skip traces on Notices returned as undeliverable, the calculation, processing, mailing

22   requests to cure deficiencies in the Claim Form, and mailing of all Qualified Claimants'

23   settlement checks.  All administration costs shall be deducted proportionally from the Gross

24   Fund Value.

25        g.    Tax Treatment of Claim Share Portion of Settlement Payments:  Of the

26   amount to be paid to Class Members, fifty percent (50%) is allocated to wages.  The remaining

27   50% of the amount paid to Class Members is allocated to interest, penalties (non-wages).

28   Defendant shall be responsible for paying the employer's share of payroll taxes, in addition to

- 6 -

the NFV, on any portion of the settlement where payroll taxes are required by law. Each Class

Member will be responsible for correctly characterizing this compensation for tax purposes and

for payment of any taxes owing on said amount. In the event of an audit of Defendant by any

state or federal government agency, or if any tax authority should dispute the characterization of

this compensation, Defendant reserves all rights to indemnification permitted by law.

        h.     Tax Treatment of Class Representative Enhancement Award: Plaintiffs

will each receive an IRS Form 1099 for their individual enhancement awards, and will be

responsible for correctly characterizing this additional compensation for tax purposes and for

payment of any taxes owing on said amount. In the event of an audit of Defendant by any state

or federal government agency, or if any tax authority should dispute the characterization of this

compensation, Defendant reserves all rights to indemnification permitted by law.

        i.     Resolution of Disputes Relating To Amounts Owed to a Claimant: A

"Qualified Claimant" will be defined as an individual in the Settlement Class who will have

timely submitted a Claim Form properly signed and including the last four numbers of their

social security number, and have not submitted a request for exclusion. If a Qualified Claimant

timely disputes Defendant's records (on a Claim Form) as to the proper size of his or her claim,

the Parties' Counsel will make a good faith effort to resolve the dispute informally. If counsel

for the parties cannot agree, the dispute shall be submitted to the Claims Administrator, who

shall examine the records in an attempt to resolve the dispute. The Claims Administrator will

make every effort to resolve any such disputes prior to final approval of this Settlement. In the

event the Claims Administrator is unable to resolve a dispute, the dispute shall thereafter be

submitted to the Court for final resolution.

### **NOTICE TO THE PLAINTIFF CLASS**

13.     The Parties agree that within ten (10) business days after preliminary approval of

this Settlement Agreement, Defendant will provide to the Claims Administrator all of the

following information about each Class Member in a format requested by the Claims

Administrator ("Class Data List"): (1) name, (2) last known home address and telephone

number, (3) Social Security Number, and (4) dates of employment during the class period in

- 7 -

1  covered positions for each class member.  The Claims Administrator will perform address

2  updates and verifications as necessary prior to the first mailing.

3       14.    Within ten (10) business days of its receipt of the Class Data List, the Claims

4  Administrator will send Class Members, by first-class mail, at their last known address, the

5  court-approved Notice of Pendency of Class Action ("Notice") in the form attached hereto as

6  Exhibit "A", a green Claim Form in the form attached hereto as Exhibit "B", and a Request for

7  Exclusion Form, in the form attached hereto as Exhibit "C."  A Notice, Claim Form and Request

8  for Exclusion Form shall be referred to collectively as a "Notice Packet."  The Notice Packet

9  also will include a calculation of the Class Member's estimated payment (assuming all requests

10 for attorney's fees, administration costs, and enhancement are awarded in full).

11 **CLAIM PROCESS**

12      15.    Class Members will have thirty (30) days from the date the Notice Packets are

13 mailed by the Claims Administrator to postmark their signed green Claim Forms, Objections,

14 and/or Requests For Exclusion.  In the event a Class Member timely returns a valid Claim Form

15 and a Request for Exclusion, the claim will be deemed invalid, and the Claims Administrator

16 will contact the Class Member for clarification of the Class Member's intent.  If the class

17 member fails to provide clarification within the time limits of the settlement, his or her claim will

18 be deemed invalid as if no claim was made at all.  The Claims Administrator will mail a follow

19 up notice ("reminder post-card") to those Class Members who have not responded with the

20 return of a Claim Form or a Request for Exclusion twenty (20) days before the expiration of the

21 claim period encouraging Class Members to respond before the deadline.  The Claims

22 Administrator shall place one reminder telephone call to those Class Members who have not

23 responded with the return of a Claim Form or a Request for Exclusion ten (10) days before the

24 expiration of the claim period encouraging Class Members to respond before the deadline.  The

25 Claims Administrator will perform one skip-trace on returned mail and re-mail Claim Forms to

26 an updated address (if any) within ten (10) days of receiving notice that a Notice Packet was

27 undeliverable.  It is the intent of the parties that reasonable means be used to locate Class

28 Members.

16.     Within five (5) business days of receipt by the Claims Administrator of each timely-submitted Claim Form, the Claims Administrator will send a deficiency notice to the Class Members for any irregularities in the completed Claim Form. The deficiency notice will provide the Class Members no more than fifteen (15) days from the mailing of the deficiency notice to postmark a written response to cure all deficiencies. The failure of a Class Member to timely submit a Claim Form, or timely submit a response to any deficiency notice, shall invalidate a claim and will not be considered deficiencies subject to cure, unless counsel for both parties stipulate to allow cure. The failure of a Class Member to sign a Claim Form will be considered a deficiency subject to cure.

17.     All original Claim Forms shall be mailed directly to the Claims Administrator at the address indicated on the Claim Form. Defendant, with the Class Data List, will provide the Claims Administrator an Excel spreadsheet that the administrator will use to calculate each Class Member's proportional share of the NFV. The Claims Administrator will certify jointly to Class Counsel and Defendant's counsel which claims were timely filed. The Claims Administrator shall be responsible for calculating the payments (including recalculation of each claimant's share based on reallocation of unclaimed amounts) issuing the payments and calculating and withholding all required state and federal taxes, if any, and for communicating this information to Defendant. Upon completion of its calculation of payments, the Claims Administrator shall provide Plaintiffs and Defendant with a report listing the amount of all payments to be made to each Qualified Claimant, in which the names of the Claimants will be coded. Proof of payment will be filed with the Court and provided to the Parties' counsel.

## RIGHT TO RECISSION IN THE EVENT OF EXCESS OPT-OUTS

18.     Notwithstanding any other provision of this Stipulation of Settlement, Defendant shall retain the right, in the exercise of its sole discretion, to nullify the settlement within thirty (30) days of expiration of the opt-out deadline, if five percent (5%) or more of Class Members opt out of the settlement. If Defendant wishes to exercise this right, it must do so by written communication to Class Counsel, received by Class Counsel within the thirty (30) day period. All signatories and their counsel must not encourage opt-outs. Class Counsel specifically agree

- 9 -

1   not to solicit opt-outs, directly or indirectly, through any means.  Objective statements to Class

2   members who call Plaintiffs' counsel with inquiries regarding the settlement, shall not be

3   deemed a violation of the prohibitions contained herein.  In the event of such a rescission, no

4   party may use the fact that the parties agreed to settle this case as evidence of Defendant's

5   liability in this lawsuit or the lack thereof.

6                           **RELEASE BY THE CLASS**

7        19.      Upon final approval by the Court, the Settlement Class, and each Class Member

8   who has not submitted a timely and valid Request for Exclusion form, will release Kaiser

9   Foundation Health Plan, Inc., and any parent, subsidiary, affiliate, predecessor or successor, and

10  all agents, employees, officers, directors and attorneys thereof, from any and all claims, debts,

11  liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or

12  causes of action, contingent or accrued, which relate to the factual allegations and claims

13  asserted in the Lawsuit, including without limitation to, claims under the FLSA, the California

14  Labor Code or Business & Professions Code (including section 17200), claims for restitution and

15  other equitable relief, liquidated damages, punitive damages, waiting time penalties, PAGA

16  penalties, penalties of any nature whatsoever, or any other benefit claimed on account of the

17  allegations asserted in the Lawsuit.  This Stipulation of Settlement will release all claims within

18  the scope of the Lawsuit arising on or before the date of final approval.

19               **DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL**

20       20.      The Parties shall promptly submit this Stipulation of Settlement to the Court in

21  support of a request for preliminary approval and determination by the Court as to its fairness,

22  adequacy, and reasonableness.  Promptly upon execution of this Stipulation of Settlement, the

23  Parties shall apply to the Court for the entry of a preliminary order which would accomplish the

24  following:

25       a.       Schedule a final fairness hearing on the question of whether the proposed

26  settlement, including payment of attorneys' fees and costs, and the Class Representatives'

27  enhancement award, should be finally approved as fair, reasonable, and adequate as to the Class

28  Members;

                                  - 10 -

1          b.     Certifying a settlement class for all claims;

2          c.     Certifying this action under Federal Rule 23 as a class action for purposes

3  of settlement;

4          d.     Approving as to form and content the proposed Notice;

5          e.     Approving as to form and content the proposed green Claim Form;

6          f.     Approving as to form and content the proposed Request for Exclusion

7  Form;

8          g.     Directing the mailing of the Notice, Claim Form, Request for Exclusion

9  Form, by first class mail to the Class Members;

10          h.     Preliminarily approving the settlement subject only to the objections of

11  Class Members and final review by the Court;

12          i.     Preliminarily approving costs of Rust Consulting in an amount expected

13  not to exceed TWENTY-FIVE THOUSAND DOLLARS ($25,000);

14          j.     Preliminarily approving Class Counsel's request for attorneys' fees and

15  litigation expenses subject to final review of the Court; and

16          k.     Preliminarily approving Class Counsel's request that Plaintiffs receive

17  enhancement awards.

18              **DUTIES OF THE PARTIES FOLLOWING FINAL APPROVAL**

19     21.    Following final approval of the settlement provided for in this Stipulation of

20  Settlement, Class Counsel will submit a proposed final order and Judgment:

21          a.     Approving the settlement, adjudging the terms thereof to be fair,

22  reasonable, and adequate, and directing consummation of its terms and provisions;

23          b.     Approving Class Counsel's application for an award of attorneys' fees and

24  reimbursement of costs;

25          c.     Approving the enhancement award(s);

26          d.     Barring all members of the Settlement Class from prosecuting against

27  Releasees, any individual or class claims that were asserted in this action, including without

28  limitation any claims arising out of the acts, facts, transactions, occurrences, representations, or

- 11 -

1 omissions set forth in this action, through the date of the final approval of this settlement upon

2 satisfaction of all payments and obligations hereunder.

3 ## PARTIES' AUTHORITY

4 22. The signatories hereto hereby represent that they are fully authorized to enter into

5 this Stipulation of Settlement and bind the Parties hereto to the terms and conditions hereof.

6 ## MUTUAL FULL COOPERATION

7 23. The Parties agree to fully cooperate with each other to accomplish the terms of

8 this Stipulation of Settlement, including but not limited to, execution of such documents and to

9 take such other action as may reasonably be necessary to implement the terms of this Stipulation

10 of Settlement. The Parties to this Stipulation of Settlement shall use their best efforts, including

11 all efforts contemplated by this Stipulation of Settlement and any other efforts that may become

12 necessary by order of the Court, or otherwise, to effectuate this Stipulation of Settlement and the

13 terms set forth herein. As soon as practicable after execution of this Stipulation of Settlement,

14 Class Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all

15 necessary steps to secure the Court's final approval of this Stipulation of Settlement.

16 ## NO PRIOR ASSIGNMENTS

17 24. The Parties hereto represent, covenant, and warrant that they have not directly or

18 indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to

19 any person or entity any portion of any liability, claim, demand, action, cause of action, or rights

20 herein released and discharged except as set forth herein.

21 ## NO ADMISSION

22 25. Nothing contained herein, nor the consummation of this Stipulation of Settlement,

23 is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on

24 the part of Defendant. Defendant specifically denies any liability. Each of the Parties hereto has

25 entered into this Stipulation of Settlement with the intention to avoid further disputes and

26 litigation with the attendant inconvenience and expenses.

27

28

- 12 -

## CONSTRUCTION

26.     The Parties hereto agree that the terms and conditions of this Stipulation of Settlement are the result of lengthy, intensive arms-length negotiations between the Parties, and that this Stipulation of Settlement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Stipulation of Settlement.

## CAPTIONS AND INTERPRETATIONS

27.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Stipulation of Settlement or any provision hereof.  Each term of this Stipulation of Settlement is contractual and not merely a recital.

## MODIFICATION

28.     This Stipulation of Settlement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.  This Stipulation of Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## INTEGRATION CLAUSE

29.     This Stipulation of Settlement contains the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

## BINDING ON ASSIGNS

30.     This Stipulation of Settlement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

- 13 -

**CLASS COUNSEL SIGNATORIES**

31.    It is agreed that because of the large number of Class Members, it is impossible or impractical to have each Class Member execute this Stipulation of Settlement. The Notice, Exhibit "A," will advise all Class Members of the binding nature of the release and such shall have the same force and effect as if this Stipulation of Settlement were executed by each member of the Class.

**COUNTERPARTS**

32.    This Stipulation of Settlement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation of Settlement, which shall be binding upon and effective as to all Parties.

DATED: _8/25_ , 2009

By _____
        Michelle Mike
Plaintiff and Class Representative

DATED: _____, 2009

By _____
        Paris Hill
Plaintiff and Class Representative

DATED: _____, 2009

By _____
        Michael Williams
Plaintiff and Class Representative

## CLASS COUNSEL SIGNATORIES

31.    It is agreed that because of the large number of Class Members, it is impossible or impractical to have each Class Member execute this Stipulation of Settlement. The Notice, Exhibit "A," will advise all Class Members of the binding nature of the release and such shall have the same force and effect as if this Stipulation of Settlement were executed by each member of the Class.

## COUNTERPARTS

32.    This Stipulation of Settlement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation of Settlement, which shall be binding upon and effective as to all Parties.

DATED: _____, 2009

By_____
    Michelle Mike
    Plaintiff and Class Representative

DATED: _____, 2009

By_____
    Paris Hill
    Plaintiff and Class Representative

DATED: _Aug 10th_, 2009

By_____
    Michael Williams
    Plaintiff and Class Representative

- 14 -

PARTIES' STIPULATION OF SETTLEMENT AND RELEASE BETWEEN PLAINTIFFS AND DEFENDANT

## CLASS COUNSEL SIGNATORIES

31.    It is agreed that because of the large number of Class Members, it is impossible or impractical to have each Class Member execute this Stipulation of Settlement.  The Notice, Exhibit "A," will advise all Class Members of the binding nature of the release and such shall have the same force and effect as if this Stipulation of Settlement were executed by each member of the Class.

## COUNTERPARTS

32.    This Stipulation of Settlement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation of Settlement, which shall be binding upon and effective as to all Parties.

DATED: _____, 2009

By_____
        Michelle Mike
Plaintiff and Class Representative

DATED: 8-25, 2009

By  *Paris Hill*
        Paris Hill
Plaintiff and Class Representative

DATED: _____, 2009

By_____
        Michael Williams
Plaintiff and Class Representative

- 14 -

PARTIES' STIPULATION OF SETTLEMENT AND RELEASE BETWEEN PLAINTIFFS AND DEFENDANT

1    DATED: 8/25 , 2009          QUALLS & WORKMAN, LLP

2
                                  By_____
3                                      Daniel H. Qualls
                                  Attorneys for Plaintiffs
4                                 MICHELLE MIKE, PARIS HILL, AND MICHAEL
                                  WILLIAMS
5
     DATED: _____, 2009
6

7                                 By_____
                                       Gregory Adams
8                                      Regional President
                                  For Defendant
9                                 KAISER FOUNDATION HEALTH PLAN, INC.

10
     DATED: _____, 2009       SEYFARTH SHAW LLP
11

12
                                  By_____
13                                     Thomas R. Kaufman
                                  Attorneys for Defendant
14                                KAISER FOUNDATION HEALTH PLAN, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -

PARTIES' STIPULATION OF SETTLEMENT AND RELEASE BETWEEN PLAINTIFFS AND DEFENDANT

1   DATED: _____, 2009          QUALLS & WORKMAN, LLP

2

3                                    By_____
                                         Daniel H. Qualls
                                     Attorneys for Plaintiffs
4                                    MICHELLE MIKE, PARIS HILL, AND MICHAEL
                                     WILLIAMS
5   DATED: 9/5 , 2009

6

7                                    By_____
                                         Gregory A. Adams
8                                        Regional President
                                     For Defendant
9                                    KAISER FOUNDATION HEALTH PLAN, INC.

10  DATED: _____, 2009           SEYFARTH SHAW LLP

11

12                                   By_____
13                                       Thomas R. Kaufman
                                     Attorneys for Defendant
14                                   KAISER FOUNDATION HEALTH PLAN, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -

1   DATED: _____, 2009          QUALLS & WORKMAN, LLP

2

3                                   By_____
                                        Daniel H. Qualls
4                                   Attorneys for Plaintiffs
                                    MICHELLE MIKE, PARIS HILL, AND MICHAEL
5                                   WILLIAMS

    DATED: _____, 2009
6

7                                   By_____
                                        Gregory Adams
8                                       Regional President
                                    For Defendant
9                                   KAISER FOUNDATION HEALTH PLAN, INC.

10
    DATED: July 24, 2009            SEYFARTH SHAW LLP
11

12
                                    By_____
13                                      Thomas R. Kaufman
                                    Attorneys for Defendant
14                                  KAISER FOUNDATION HEALTH PLAN, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# STIPULATION OF SETTLEMENT
# EXHIBIT A

**UNTIED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**
**(Case Number C 08-05374 PJH)**

*A court authorized this notice. This is not a solicitation.*
*This is not a lawsuit against you and you are not being sued.*
*However, your legal rights are affected whether you act or don't act.*
*IMPORTANT: YOU ARE MOST LIKELY ENTITLED TO MONEY IF THE COURT APPROVES THE SETTLEMENT DESCRIBED HEREIN*
*AND YOU FOLLOW THE CLAIMS PROCEDURE EXPLAINED BELOW*

## NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, YOUR RIGHTS, AND OPTIONS FOR YOU TO CONSIDER

**If you were employed by Kaiser Foundation Hospitals and/or Kaiser Foundation Health Plan, Inc. in California, and worked as a Project Manager I ("PM I") or Project Manager ("PM II") in connection with KP HealthConnect between November 25, 2004 and July 9, 2009, THEN YOU MAY RECEIVE MONEY FROM A CLASS ACTION SETTLEMENT.**

**IMPORTANT: YOU MUST SIGN & MAIL THE ENCLOSED GREEN CLAIM FORM ON OR BEFORE THE DEADLINE, [DATE], TO RECEIVE YOUR SHARE OF THE SETTLEMENT. THE AMOUNT PROJECTED AS THE MINIMUM SHARE OF THE SETTLEMENT YOU WILL RECEIVE IS SET FORTH ON THE GREEN CLAIM FORM AND IN SECTION IX BELOW.** *ALSO, PLEASE NOTE THAT YOUR DECISION TO PARTICIPATE OR NOT PARTICIPATE IN THIS SETTLEMENT WILL HAVE NO DIRECT OR INDIRECT IMPACT ON ANY SEVERANCE AGREEMENT ENTERED INTO OR OFFERED TO ANY CLASS MEMBER BY EITHER KAISER FOUNDATION HOSPITALS OR KAISER FOUNDATION HEALTH PLAN, INC.*

### *PLEASE READ THIS NOTICE CAREFULLY.*

### WHAT THIS NOTICE CONTAINS

I.      What Is The Purpose Of This Notice? ................................................................ Page 2

II.     Why Do Plaintiffs Seek Settlement Approval? .................................................. Page 2

III.    What Is Defendant's Position On Settlement?.................................................... Page 2

IV.     Why Did I Get Notice? ...................................................................................... Page 2

V.      Who Are The Parties In The Class Action?........................................................ Page 3

VI.     Who Are The Attorneys Representing The Parties?........................................... Page 3

VII.    What Is The Proposed Settlement?.................................................................... Page 3

VIII.   What Are My Rights With Regard To This Matter? ........................................... Page 4

IX.   How Much Money Will I Get If I Make a Proper Claim And Do Not Request Exclusion?.   Page 5

X.    Additional Important Information........................................................................................   Page 5

XI.   Who Can I Contact If I Have Further Questions?...............................................................   Page 5

## I.   **What Is The Purpose Of This Notice?**

The purpose of this Notice is to let you know that there is a class action lawsuit pending in the Northern District of the United States District Court, that you may be a member of the Class in this lawsuit, AND THAT YOU MAY BE ENTITLED TO A PAYMENT AS PART OF THE SETTLEMENT OF THIS LAWSUIT. This action was filed by Michelle Mike, Paris Hill and Michael Williams against Kaiser Foundation Health Plan, Inc. ("Kaiser" or "Defendant") in United States District Court, Case No. C 08-05374 PJH ("the lawsuit"). The lawsuit alleges that Kaiser has failed to pay employees overtime compensation and to provide meal and rest periods as required by law.

The Parties to the lawsuit have agreed to settle the matter. On _____, 2009, in Courtroom 5 of the United States District Court, Northern District of California, the Court held a hearing in which it approved the parties' motion for a court order that does the following:

    1.)   temporarily and conditionally certifies the Class Action for settlement purposes only;
    2.)   grants preliminary Court approval of the proposed settlement;
    3.)   grants Court approval of this notice, which includes setting a schedule and procedure for filing claim forms and exclusion notices; and
    4.)   schedules a Final Fairness Determination Hearing for final Court approval of the Settlement for _____, 2009, _____ a.m. in Courtroom 5 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102.

## II.   **Why Do Plaintiffs Seek Settlement Approval?**

Plaintiffs seek approval of the Settlement because they have reached a proposed Settlement with Defendant that they believe to be fair, reasonable, adequate and in the best interests of the members of the Class and all parties.

## III.   **What Is The Defendant's Position On Settlement?**

Defendant views this Settlement as a compromise. It is not admitting to the allegations in the case. Defendant denies that any of its practices at issue in this lawsuit were or are unlawful and reserves the right to object to all claims if the settlement fails for any reason. The Court file has the settlement documents with more information on the lawsuit.

## IV.   **Why Did I Get This Notice?**

You received this Notice because Kaiser's records identify you as a member of the settlement class. You may submit the enclosed green Claim Form to get money from this settlement if (1) you worked for Kaiser Foundation Hospitals and/or Kaiser Foundation Health Plan, Inc. in California; and (2) you worked as either a PM I or a PM II and provided services in connection with the KP HealthConnect program between November 25, 2004 and July 9, 2009.

## V.   **Who Are The Parties In This Class Action?**

Michelle Mike, Paris Hill and Michael Williams, current and former employees of Kaiser, are the Plaintiffs who brought the action on behalf of themselves and on behalf of all similarly situated former and current Kaiser employees.

Kaiser Foundation Health Plan, Inc. is the Defendant.

## VI.   **Who Are The Attorneys For The Parties?**

**Counsel for Plaintiffs**
Daniel H. Qualls
Robin G. Workman
**QUALLS & WORKMAN, LLP**
244 California Street, Suite 410
San Francisco, California 94111
Phone:  (415) 782-3660/Fax:  (415) 788-1028

**Counsel for Defendant**
Thomas R. Kaufman
Lorraine H. O'Hara
Mariana Aguilar
**SEYFARTH SHAW LLP**
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Phone:  (310) 277-7200/Fax:  (310) 201-5219

## VII.   **What Is The Proposed Settlement?**

Defendant agreed to pay a maximum settlement amount of $1,400,000 to all employees or former employees of Kaiser Foundation Hospitals and/or Kaiser Foundation Health Plan, Inc. who, between November 25, 2004 and July 9, 2009, worked in California as a PM I and/or PM II and provided services in connection with the KP HealthConnect program.  This sum includes payment of expenses and fees of the Claims Administrator which is anticipated to be no more than $25,000, an enhancement of $10,000 to class representative Mike, an enhancement of $10,000 to class representative Hill, and an enhancement of $10,000 to class representative Williams for the initiation of the lawsuit, efforts in assisting counsel and risks undertaken for costs in the event they were unsuccessful, and attorneys' fees and costs of up to one-third of the Settlement Amount, as approved by the Court.

The following is a summary of the Settlement provisions.  The specific and complete terms of the proposed Settlement are stated in the Stipulation of Settlement and Release Between Plaintiffs and Defendant, ("Settlement Agreement"), a copy of which is filed with the Clerk of the Court.

**Settlement Payment.**  Defendant has agreed to pay all valid and timely claims through the Claims Administrator in accordance with the terms of the Settlement Agreement, after Final Approval of the Class Action Settlement.  These settlement payments will be distributed approximately fifteen days after the effective date of the Final Approval, provided there is no appeal of the Court's Final Approval of the Class Action Settlement.

After the deduction of the Court-approved expenses from the Settlement Amounts, the remaining sum ("Net Fund Value"), estimated to be at _____, will be available to pay each member of the Settlement Class who submits a valid and timely Claim Form ("Qualified Claimant") his or her allocated share of the net settlement amount.

Each Qualified Claimant's allocation of the Net Fund Value will be determined based on the number of weeks that he or she worked during the class period.  (Workweeks will be calculated by dividing the number of payroll

work hours a class member recorded in a covered position during the applicable class period(s), dividing that number by 40, and rounding up to the nearest integer.)

## VIII.   **What Are My Rights With Regard To This Matter?**

If you fit the description of a Class Member as set forth in this Notice, you have four options.  Each option has its own consequences, which you should understand before making your decision.  Your rights regarding each option, and the procedure you must follow to select each option, follow.

A.   Option One.  Participation as a Class Member.

To get money from the Settlement you **must** complete the enclosed green "CLAIM FORM" **sign it**, and return it to Claims Administrator, _____ , at the address provided below, **post-marked on or before** _____ , **2009**.

*It is strongly recommended that you retain proof of your timely mailing until receipt of your settlement payment.*

Class Counsel, appointed and approved by the Court for Settlement purposes only, will represent you.  The Claims Administrator will process the Claim Form and send you a check at a later date.  **If you fail to timely return a completed and signed Claim Form, you will not receive any money from the Settlement and you will not be permitted to assert any claims based on the allegations in the class action.**

B.   Option Two.  You Can Exclude Yourself ("opt out") From the Settlement.

If you do not wish to participate in or be bound by the Settlement, you must mail to the Claims Administrator, _____ , at the address provided below, the enclosed "Request for Exclusion from the Class Action Settlement", **post-marked on or before** _____ , **2009**.  The Request for Exclusion must be signed and dated with the last four digits of your Social Security Number inserted.

If you request exclusion, you will not receive any money from the Settlement, nor will you be considered to have released your claims alleged in the class action.  If you request exclusion from the Class Action Settlement, you may not pursue any recovery under the Class Action Settlement.  You may, however, pursue other remedies separate and apart from the Class Action Settlement that may be available to you.

Do NOT return both a Claim Form and a Request for Exclusion Form.  Should you do so, you will be deemed to have made a claim and your Request for Exclusion will be deemed invalid.

C.   Option Three.  You May Object to the Settlement.

If you are a Class Member, and you do not exclude yourself from the Settlement Class (opt out), you may object to the settlement before final approval of the settlement by the Court.  If you choose to object to the settlement, you may enter an appearance *in propria persona* (meaning you choose to represent yourself), or through an attorney that you hire and pay for yourself.

In order to object to the settlement, or any portion of it, you must file and serve any such written objection on or before _____ , **2009**.  Objections must be timely filed in the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, and timely served on the attorneys for Plaintiffs and the attorneys for Defendant, to be considered by the Court.  If you intend to object to the Settlement, but wish to receive your share of the settlement proceeds, *you must timely return the*

**enclosed Claim Form as indicated herein.** If the Court approves the Settlement despite any objections and you have not returned the enclosed Claim Form, you will NOT receive your share of the Settlement proceeds.

D. Option Four. Do Nothing.

If you are a Class Member, and you do not file a claim and do not exclude yourself from the class, you will be bound by the Settlement, receive none of the Settlement proceeds, and be barred from separately pursuing the claims released by the Settlement.

The judgment will bind all Settlement Class Members who do not request exclusion. Any member who does not request exclusion may, if the member so desires, enter an appearance through his or her own lawyer.

## IX.   How Much Money Will I Get If I Make A Proper Claim And Do Not Request Exclusion?

As mentioned above, Defendant has agreed to pay a maximum gross settlement amount of $1,400,000 in consideration for this settlement and a release of all claims asserted in the lawsuit by the Settlement Class against it. The distribution formula is set forth in Section VII and the number of workweeks you worked and your anticipated minimum share of the settlement are set forth in the Claim Form enclosed with this Notice. In the event the Court approves less than the full amount requested for attorneys' fees, or attorneys' costs or the enhancement, then the amount not awarded will be added to the Net Settlement Fund.

Based on the Settlement formula and Kaiser's records you should receive at least $_____.   To the extent that class members fail to make claims, the unclaimed portion of the Net Fund Value will be assigned to pay the employer-side payroll taxes on any settlement claims, and any excess beyond that will be redistributed proportionally among class members who made claims. Therefore, it is possible that you will receive more than the above-amount.

## X.   Additional Important Information

You will get your share of the Settlement Proceeds only if you return a signed and dated Claim Form **postmarked on or before** _____**, 2009.** It is your responsibility to **ensure that the Claims Administrator has received** your timely Claim Form. You may contact the Claims Administrator at the toll-free number listed at the bottom of each page to confirm it has been timely received. It also is your responsibility to **keep a current address on file** with the Claims Administrator to ensure that you receive your settlement payment should the Court order final approval of the settlement.

## XI.   Who Can I Contact if I Have Further Questions?

The court-appointed Administrator for this Class Action Settlement is as follows:

*Mike v. Kaiser Settlement*
[NAME]
[ADDRESS]
[TELEPHONE NUMBER]

If you have questions, you may call the Claims Administrator, toll free at [TELEPHONE NUMBER]. Ask about the *Mike v. Kaiser* Class Settlement. You may also call any of the attorneys for Plaintiffs listed in Section VI above. **PLEASE DO NOT CALL THE COURT.**

**STIPULATION OF SETTLEMENT**
**EXHIBIT B**

# CLAIM FORM

In The Matter of
*Michelle Mike, Paris Hill and Michael Williams v. Kaiser Permanente*
United States District Court, Northern District of California, Case No. C 08-5374 PJH

**INSTRUCTIONS:**     **IF YOU AGREE TO PARTICIPATE IN THE SETTLEMENT, COMPLETE THIS CLAIM FORM TO RECEIVE YOUR MONETARY RECOVERY, AND PROMPTLY RETURN THIS FORM POSTMARKED ON OR BEFORE _____, 2009 TO:**

*Mike v. Kaiser Settlement*
[NAME]
[ADDRESS]
[TELEPHONE NUMBER]

## 1.  CLAIMANT IDENTIFICATION

**[CORRECT INFORMATION]**

Name: _____     Name While Employed: _____
Address: _____
_____     _____
Telephone: home:     (     ) _____     _____
Telephone: work/cell: (     ) _____     _____

*If any of the information above is incorrect,*
*YOU MUST provide the correct information in the space provided above.*

## 2.  EMPLOYMENT WITH KAISER FOUNDATION HOSPITALS AND/OR KAISER FOUNDATION HEALTH PLAN, INC. ("Kaiser")

### Section A:  Claim Based on Kaiser's Records

Kaiser's records indicate that you were employed in California as a Project Manager I and/or a Project Manager II between November 25, 2004 and July 9, 2009 ("Class Period").

The settlement formula is set forth in the Notice you received with this Claim at Page [#].  The amount that you will receive if you participate in the settlement depends on the amount of workweeks Kaiser's records show that you worked during the Class Period.  Based on the settlement formula and Kaiser's records showing that you worked \_\_\_ workweeks during the class period, [Date-Date],you should receive at least $\_\_\_\_\_.  To the extent that class members fail to make claims, the unclaimed portion of the Net Fund Value will be redistributed proportionally among class members who made claims.

If you agree with the information stated above, and want to participate in the settlement, please sign, date where indicated below, and return Page 3 of this Claim Form postmarked **on or before _____, 2009** to receive your monetary recovery.  **If you disagree with the information stated above, and want to participate in the Settlement, please fill in Section B below before you sign and date this form.**

Again, it is your responsibility to ensure the Claims Administrator has timely received your Claim Form.  You may contact the Claims Administrator at the toll-free number listed at the bottom of each page to ensure that your Claim Form has been received.

**Questions?  Call [PHONE NUMBER]**

Equally important, is your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your share of the settlement.

### Section B:  Claim Based on Information Provided by Class Member

Complete this section *ONLY IF* you believe that the information set forth in Section A above is not accurate. When you return this Claim Form to the Claims Administrator, you must also send documentation that supports or relates to the information that you provide in this Section B.  (Please exclude weeks worked prior to November 25, 2004 and after July 9, 2009.)

Information regarding _____, is as follows:

| TIME PERIOD WORKED | TOTAL NUMBER OF WEEKS WORKED |
|---|---|
| 1. | |
| 2. | |
| 3. | |

### 3.  TO RECEIVE YOUR SET TLEMENT PAYMENT

**YOU MUST COMPLETE, SIGN AND RETURN PAGE 3 OF THIS CLAIM  FORM TO THE CLAIMS ADMINISTRATOR POSTMARKED BY U.S. MAIL ON OR BEFORE _____<DATE>, 2009, IN THE MANNER SET FORTH BELOW:**

You may return this Claim Form BY FIRST CLASS, U.S. MAIL, POSTAGE PAID OR EQUIVALENT, POSTMARKED ON OR BEFORE _____, 2009, ADDRESSED AS FOLLOWS:

*Mike v. Kaiser Settlement*
[NAME]
[ADDRESS]
[TELEPHONE NUMBER]

It is very strongly recommended that you keep a copy of your postmarked return envelope or other proof which reflects the timely submission of your claim, and a copy of Page 3 of this Claim Form.

BE SURE TO COMPLETE AND RETURN  PAGE 3 OF THIS CLAIM
FORM WHEN MAILING TO THE ADMINISTRATOR

If you move, it is your responsibility to send the Claims Administrator your new address and contact information to ensure receipt of further notices and your settlement payment.

If you are eligible and have submitted a valid and timely Claim Form, and the Class Action Settlement has been finally approved by the Court, payment will be made to you in approximately <XXXXXXXXXXX>.

### 4.  RELEASE

Upon final approval by the Court, the Settlement Class, and each Class Member who has not submitted a timely and valid Request for Exclusion form, will release Kaiser Foundation Health Plan, Inc., and any parent,

**Questions?  Call [PHONE NUMBER]**

subsidiary, affiliate (including Kaiser Foundation Hospitals), predecessor or successor, and all agents, employees, officers, directors and attorneys thereof, from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action contingent or accrued for, or which relate to, the allegations and claims asserted in this lawsuit, including without limitation to, any claims under the Fair Labor Standards Act, California Labor Code or Business & Professions Code (including section 17200), claims for restitution and other equitable relief, liquidated damages, punitive damages, waiting time penalties, Private Attorney General Act penalties, penalties of any nature whatsoever, or any other benefit claimed on account of the allegations asserted in this lawsuit.

PLEASE NOTE:  PARTICIAPTION IN THIS SETTLEMENT AND RELEASE WILL HAVE NO DIRECT OR INDIRECT IMPACT ON ANY SEVERANCE AGREEMENT ENTERED INTO OR OFFERED TO ANY CLASS MEMBER BY KAISER FOUNDATION HOSPITALS OR KAISER FOUNDATION HEALTH PLAN, INC.

Signed: _____     Date:_____

Print Name:_____     Last 4 Digits of Soc. Sec. # _____


[CLAIM NO._____]

*STIPULATION OF SETTLEMENT*
*EXHIBIT C*

**[COMPLETE THIS FORM *ONLY IF* YOU CHOOSE TO NOT PARTICIPATE IN THIS SETTLEMENT]**

**REQUEST FOR EXCLUSION FROM CLASS ACTION SETTLEMENT**

In The Matter of

*Michelle Mike, Paris Hill and Michael Williams v. Kaiser Permanente*

United States District Court, Northern District of California, Case No. C 08-5374 PJH

**INSTRUCTIONS:**    TO OPT-OUT OF THE SETTLEMENT, YOU MUST COMPLETE, SIGN AND MAIL THIS FORM BY FIRST CLASS U.S. MAIL OR EQUIVALENT, POSTAGE PAID, POSTMARKED ON OR BEFORE _____, 2009, ADDRESSED AS FOLLOWS:

*Mike v. Kaiser Settlement*
[NAME]
[ADDRESS]
[TELEPHONE NUMBER]

Please fill in all of the following information (type or print):

NAME (First, Middle, Last): _____

STREET ADDRESS: _____

CITY, STATE, ZIP CODE: _____

FORMER NAMES (if any): _____

TELEPHONE NUMBERS:  Home: _____   Work: _____

**IT IS STRONGLY RECOMMENDED THAT YOU RETAIN PROOF OF MAILING THIS FORM POST-MARKED ON OR BEFORE _____, 2009.**

I [insert your name] _____ wish to be excluded from the settlement class in the case of *Michelle Mike, Paris Hill and Michael Williams v. Kaiser Permanente*, United States District Court, Northern District of California, Case No. C 08-5374 PJH.  I understand I will not receive money from the class settlement.

I further verify that the following is true:  My name, address and other contact information are accurately set forth above.  I received and had the opportunity to read the Notice of Pendency of Class Action that was sent to me along with this form.  I understand that by signing this side of the form, I voluntarily choose to "opt out" of the proposed Settlement of this Class Action.  **I understand that by opting out, I may not accept any money allocated for me in the proposed Settlement**.  On the other hand, I also understand that if I wish to assert any claims related to those set forth in this lawsuit, I will have to do so separately.  I understand that any such claims are subject to strict time limits, known as statutes of limitations, which restrict the time within which I may file any such action.  I understand that I should consult with an attorney if I wish to obtain advice regarding my rights with respect to this Settlement or my choice to opt out of the Settlement.  I have not been coerced by anyone to opt out of this Class Action, and I choose to opt out of my own free will.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

Signed: _____        Date: _____

Print Name: _____        Last four digits of Social Security Number _____

# EXHIBIT C

1   Daniel H. Qualls, Bar No. 109036
2   Robin G. Workman, Bar No. 145810
    Aviva N. Roller, Bar No. 245415
3   **QUALLS & WORKMAN, LLP**
    244 California Street, Suite 410
4   San Francisco, CA 94111
    Telephone: (415) 782-3660
5   Facsimile: (415) 788-1028

6   *Attorneys for Plaintiff*

7                   UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10  MICHELLE ONYETTE MIKE and PARIS          )   Case No.  C 08-05374 PJH
    HILL, on behalf of themselves individually )
11  of all others similarly situated,          )
                                               )
12              Plaintiff,                      )
                                               )   **PLAINTIFF MICHELLE O. MIKE'S**
13      vs.                                     )   **FIRST SET OF INSPECTION DEMANDS**
                                               )   **TO DEFENDANT KAISER FOUNDATION**
14  KAISER PERMANENTE, KAISER                  )   **HEALTH PLAN, INC.**
    FOUNDATION HEALTH PLAN, INC., aka          )
15  KAISER FOUNDATION HEALTH PLAN, and )
    DOES 1 through 100, INCLUSIVE              )
16                                             )
                Defendant(s).
17
    _____

18  PROPOUNDING PARTY:    Plaintiff Michelle O. Mike

19  RESPONDING PARTY:    Defendant Kaiser Foundation Health Plan, Inc.

20  SET:                 One

21

22          Pursuant to Federal Rules of Civil Procedure, Rule 34, Plaintiff Michelle O. Mike ("MIKE")

23  hereby requests that Defendant Kaiser Foundation Health Plan, Inc., ("KAISER") identify, produce

24  and permit for inspection and copying the below listed documents that are in the possession, custody,

25  or control of KAISER pursuant to the instructions and definitions contained herein.

26          The written responses and documents must be produced within thirty (30) days from the date

27  of service, plus an additional five (5) days if service of this demand is made by mail, pursuant to

28  Federal Rules of Civil Procedure, Rule 34.

INSPECTION DEMANDS 1                    -1-              3169\DISCOVERY\IDSETONE.DOC

## DEFINITIONS

1.  The terms **"YOU," "YOUR"** or **"YOURS"** refer to KAISER and, if applicable, the agents, employees, officers, and directors of same or of any subsidiary or divisions thereof, and their attorneys and those persons employed by their attorneys.

2.  The terms **"DOCUMENT"** or **"DOCUMENTS"** shall mean any tangible thing upon which any expression, communication or representation has been recorded by any means including, but not limited to, **"COMPUTER RECORDS," "E-MAIL RECORDS,"** handwriting, typewriting, printing, photostating, photographing, audiotaping, videotaping, magnetic impulse, or mechanical or electronic recording and any nonidentical copies (whether different from the original because of notes made on such copies, because of indications that said copies were sent to different individuals than were the originals, or because of any other reason), including but not limited to working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, scripts, records of any sort of meetings, invoices, financial statements, financial calculations, diaries, reports of telephone or other oral conversations, desk calendars, appointment books, audio or video tape recordings, microfilm, microfiche, computer tape, computer disk, computer printout, computer card, and all other writings and recordings of every kind that are in your actual or constructive possession, custody or control.

3.  **"COMPUTER RECORDS"** shall mean any tangible thing upon which any expression, communication or representation has been recorded by any means including, but not limited to, network server storage, backup storage, online server storage, microfilm, microfiche, computer tape, computer disk, computer floppy diskette, computer printout, computer card, computer hard drive, computer floppy drive, removable computer drive storage, scanner, computer facsimile, printing, photostating, photographing, video recording, audio recording, magnetic impulse, or other means of electronic recording and any nonidentical copies (whether different from the original because of notes made on such copies, because of indications that said copies were sent to different individuals than were the originals, or because of any other reason), including but not limited to working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, scripts, records of any sort of meetings, invoices, financial statements, financial calculations, diaries,

1   reports of telephone or other oral conversations, calendars, task schedulers, audio or video recordings,

2   and all other writings and recordings of every kind that are in your actual or constructive possession,

3   custody or control.

4       4.    **"E-MAIL RECORDS"** shall mean any and all tangible thing upon which any

5   expression, communication or representation has been recorded by any means including, but not

6   limited to, any form of electronic mail, Internet online e-mail, any form of interoffice and/or

7   intraoffice network e-mail, printouts of documents from Internet online e-mail or interoffice and

8   intraoffice network e-mail, including any copies which may be stored electronically in any manner

9   including, but not limited to, network server storage, backup storage, online server storage,

10   microfilm, microfiche, computer tape, computer disk, computer floppy diskette, computer printout,

11   computer card, computer hard drive, computer floppy drive, removable computer drive storage,

12   scanner, computer facsimile, printing, photostating, photographing, video recording, audio recording,

13   magnetic impulse, or other means of electronic recording and any nonidentical copies (whether

14   different from the original because of notes made on such copies, because of indications that said

15   copies were sent to different individuals than were the originals, or because of any other reason),

16   including but not limited to working papers, preliminary, intermediate or final drafts, correspondence,

17   memoranda, charts, notes, scripts, records of any sort of meetings, invoices, financial statements,

18   financial calculations, diaries, reports of telephone or other oral conversations, calendars, task

19   schedulers, audio or video recordings, and all other writings and recordings of every kind that are in

20   your actual or constructive possession, custody or control.

21       5.    To **"IDENTIFY"** documents means to provide a brief description of each document

22   sufficient to support a request for production, including at least the type of document, date of the

23   document, identification of the author and recipient (if any), all persons who received or saw copies.

24       6.    To **"IDENTIFY"** a person means to state the person's name and business address,

25   and additionally, in the case of a natural person, his home address, occupation or job title and

26   employer both presently and at the time to which the interrogatory relates and such other information

27   as should be sufficient to notice the deposition of such person and to serve such person with a

28   subpoena.

1      7.    As used herein, the term **"ALL"** is synonymous with **"ANY"** and the term **"OR"**

2  means **"AND/OR."**

3      8.    As used herein, the terms **"REGARDING," "REFER,** or **"RELATE"** means

4  relating to, referring to, pertaining to, reflecting, substantiating, evidencing, constituting, or in any

5  manner whatsoever logically or factually connected with the matter referenced, whether in whole or

6  in part.

7      9.    As used herein, the term **"TIME RECORDS" REFERS TO ANY AND ALL**

8  **DOCUMENTS** reflecting time entries regarding **ANY AND ALL** work performed, including but

9  not limited to time sheets, computer printouts, data stored on a computer hard drive, or computer disk.

10                **INSTRUCTIONS**

11      1.    This request requires you to produce all documents that are in your actual or

12  constructive possession, custody or control or that are in the possession, custody or control of your

13  attorneys, accountants, representatives, consultants, agents, employees, or anyone else acting on your

14  behalf.

15      2.    If any requested document was, but is no longer in your possession, you must specify

16  in writing and serve upon the undersigned a list indicating the identity of such documents.  Such

17  identification should, for each such document, set forth whether the document (i) has been destroyed,

18  (ii) has been lost, misplaced, or stolen, or (iii) has never been or is no longer, in your possession,

19  custody, or control, in which case the name and address of any person or entity known or believed by

20  you to have possession, custody, or control of that document or category of documents should be

21  identified.  In each such instance, explain the circumstances surrounding the disposition and state the

22  date or approximate date of such disposition and the identity of all persons who you believe to have

23  knowledge of such disposition.

24      3.    If you withhold any of the requested documents from production under a claim of

25  privilege or other protection, you must serve the undersigned a list of such withheld documents

26  indicating, for each document withheld, the following information: (i) the date composed or date

27  appearing on the document; (ii) the author; (iii) the number of pages; (iv) the number of copies made;

28  (v) the identity of all persons or entities who saw the original document or saw or received a copy of

1    such document, and the job titles of each such person; (vi) the subject matter; and (vii) the basis for

2    the claim of privilege.

3        4.      This request requires the production of documents either in the same form or in the

4    same order as they are kept in the usual course of business or organized and labeled to correspond

5    with the particular demands set forth below.  If you choose the former method, the documents are to

6    be produced in the boxes, file folders, bindings or other containers in which the documents are found.

7    The titles, labels, or other descriptions on the boxes, file folders, bindings or other containers are to be

8    left intact.

9                            **INSPECTION DEMANDS**

10   **INSPECTION DEMAND NO. 1:**

11       **ALL DOCUMENTS** depicting the organizational structure of **YOUR** human resources

12   department between November 26, 2004, **AND** the present.

13   **INSPECTION DEMAND NO. 2:**

14       **ALL DOCUMENTS REFERRING OR RELATING** to Michelle O. Mike.

15   **INSPECTION DEMAND NO. 3:**

16       **ALL** employee manuals applicable to persons employed by **YOU** in California between

17   November 26, 2004, **AND** the present.

18   **INSPECTION DEMAND NO. 4:**

19       **ALL** job descriptions regarding persons employed by **YOU** as Project Managers I and II

20   working on the Kaiser Health Connect project between November 26, 2004, **AND** the present.

21   **INSPECTION DEMAND NO. 5:**

22       **ALL DOCUMENTS** referring or relating to duties of persons employed by **YOU** in

23   California as Project Managers I and II working on the Kaiser Health Connect project between

24   November 26, 2004, **AND** the present.

25   **INSPECTION DEMAND NO. 6:**

26       **ALL DOCUMENTS REGARDING** assignment schedules for California Project

27   Managers I and II working on the Kaiser Health Connect Project for **YOU** in California between

28   November 26, 2004 **AND** the present.

INSPECTION DEMANDS 1                    -5-              3169\DISCOVERY\IDSETONE.DOC

1   **INSPECTION DEMAND NO. 7:**

2       **ANY AND ALL DOCUMENTS** depicting hours worked for each **PERSON** employed by

3   **YOU** as Project Managers I and II working on the Kaiser Health Connect Project in California

4   between November 26, 2004, **AND** the present.

5   **INSPECTION DEMAND NO. 8:**

6       **ANY AND ALL DOCUMENTS YOU** contend constitute itemized statements required

7   by California Labor Code Section 226 for each **PERSON** employed by **YOU** as Project Managers

8   I and II working on the Kaiser Connect Health Project in California between November 26, 2004,

9   **AND** the present.

10  **INSPECTION DEMAND NO. 9:**

11      **ALL DOCUMENTS REGARDING YOUR** policies for overtime pay applicable to

12  persons employed by **YOU** in California between November 26, 2004 **AND** the present.

13  **INSPECTION DEMAND NO. 10:**

14      **ANY AND ALL DOCUMENTS REFERRING,** relating **TO,** or regarding complaints by

15  persons employed by **YOU** as a Project Manager I or II who worked on the Kaiser Health Connect

16  Project in California between November 26, 2004, **AND** the present regarding overtime pay.

17  **INSPECTION DEMAND NO. 11:**

18      **ANY AND ALL DOCUMENTS REFERRING, RELATING OR REGARDING**

19  classifying **PERSONS** employed by **YOU** in California with the title Project Manager I and

20  Project Manager II who worked on the Kaiser Health Connect Project between November 26,

21  2004, **AND** the present as exempt from the requirement to pay overtime wages under California

22  law.

23  **INSPECTION DEMAND NO. 12:**

24      **ANY AND ALL DOCUMENTS REFERRING, RELATING OR REGARDING**

25  classifying **PERSONS** employed by **YOU** in California with the title Project Manager I and

26  Project Manager II who worked on the Kaiser Health Connect Project between November 26,

27  2004, **AND** the present as non-exempt from the requirement to pay overtime wages under

28  California law.

1  **INSPECTION DEMAND NO. 13:**

2      **ALL DOCUMENTS REGARDING YOUR** rest period policies for persons employed by

3  **YOU** in California as Project Managers I and II working on the Kaiser Connect Health Project in

4  effect between November 26, 2004, **AND** the present.

5  **INSPECTION DEMAND NO. 14:**

6      **ALL DOCUMENTS REGARDING YOUR** meal period policies for persons employed by

7  **YOU** in California as Project Managers I and II working on the Kaiser Health Connect Project in

8  effect between November 26, 2004, **AND** the present.

9  **INSPECTION DEMAND NO. 15:**

10      **ALL DOCUMENTS** depicting rest period breaks taken by persons employed by **YOU** in

11  California as Project Managers I and II working on the Kaiser Health Connect Project between

12  November 26, 2004, **AND** the present.

13  **INSPECTION DEMAND NO. 16:**

14      **ALL DOCUMENTS** depicting meal period breaks taken by persons employed by **YOU** in

15  California as Project Managers I and II working on the Kaiser Health Connect Project between

16  November 26, 2004, **AND** the present.

17  **INSPECTION DEMAND NO. 17:**

18      **ALL DOCUMENTS** depicting rest period breaks not taken by persons employed by **YOU** in

19  California as Project Managers I and II working on the Kaiser Health Connect Project between

20  November 26, 2004, **AND** the present.

21  **INSPECTION DEMAND NO. 18:**

22      **ALL DOCUMENTS** depicting meal period breaks not taken by persons employed by **YOU**

23  in California as Project Managers I and II working on the Kaiser Health Connect Project between

24  November 26, 2004, **AND** the present.

25  **INSPECTION DEMAND NO. 19:**

26      **ALL DOCUMENTS REFERRING, RELATING TO, OR REGARDING** complaints by

27  persons employed by **YOU** in California as Project Managers I and II working on the Kaiser Health

28  Connect Project between November 26, 2004, **AND** the present **REGARDING** rest period breaks.

1    **INSPECTION DEMAND NO. 20:**

2        **ALL DOCUMENTS REFERRING, RELATING TO, OR REGARDING** complaints by

3    persons employed by **YOU** in California as Project Managers I and II working on the Kaiser Health

4    Connect Project between November 26, 2004, **AND** the present **REGARDING** meal period breaks.

5    **INSPECTION DEMAND NO. 21:**

6        **ALL DOCUMENTS** depicting hours worked in each payroll period for persons employed

7    by **YOU** in California as Project Managers I and II working on the Kaiser Health Connect Project

8    between November 26, 2004, **AND** the present.

9    **INSPECTION DEMAND NO. 22:**

10        **ALL DOCUMENTS** depicting rest periods taken in each payroll period for persons

11    employed by **YOU** in California as Project Managers I and II working on the Kaiser Health

12    Connect Project between November 26, 2004, **AND** the present.

13    **INSPECTION DEMAND NO. 23:**

14        **ALL DOCUMENTS** depicting meal periods taken for in each payroll period for persons

15    employed by **YOU** in California Project Managers I and II working on the Kaiser Health Project

16    between November 26, 2004, **AND** the present.

17    **INSPECTION DEMAND NO. 24:**

18        **ALL DOCUMENTS** depicting duration of rest periods taken in each payroll period for

19    persons employed by **YOU** in California as Project Managers I and II working on the Kaiser Health

20    Connect Project between November 26, 2004, **AND** the present.

21    **INSPECTION DEMAND NO. 25:**

22        **ALL DOCUMENTS** depicting duration of meal periods taken in each payroll period for

23    persons employed by **YOU** in California as Project Managers I and II working on the Kaiser Health

24    Connect Project between November 26, 2004, **AND** the present.

25    **INSPECTION DEMAND NO. 26:**

26        **ALL DOCUMENTS** depicting the schedules for lunch and learn programs between

27    November 26, 2004, **AND** the present.

28

1 **INSPECTION DEMAND NO. 27:**

2      **ALL DOCUMENTS** depicting go-live schedules between November 26, 2004, **AND** the

3 present.

4

5

6 Date:   March 16, 2009                                     QUALLS & WORKMAN, L.L.P.

7

8                                                      By: _____

9                                                          Robin G. Workman
                                                           Attorney for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

I, Tammy M. Mazzullo, hereby declare:

I am employed in the City and County of San Francisco, California in the office of a member of the bar of this court at whose direction the following service was made.  I am over the age of eighteen years and not a party to the within action. My business address is Qualls & Workman, L.L.P., 244 California Street, Suite 410, San Francisco, California. On March 16, 2009, I served **PLAINTIFF MICHELLE O. MIKE'S FIRST SET OF INSPECTION DEMANDS TO DEFENDANT KAISER FOUNDATION HEALTH PLAN, INC.** on the interested parties in this action via mail by placing a true copy thereof, on the above date, enclosed in a sealed envelope following the ordinary business practice of Qualls & Workman, for collection and mailing in the United States mail addressed as set forth below:

Lorraine H. O'Hara, Esq.
Seyfarth Shaw, LLP
2029 Century Park East
Los Angeles, California 90067

I am personally and readily familiar with the business practice of Qualls & Workman for collection and processing of documents for mailing with the U.S. Postal Service, pursuant to which mail placed for collection at designated stations in the ordinary course of business is deposited the same day, proper postage prepaid, with the U.S. Postal Service.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on March 16, 2009, in San Francisco, California.

Tammy M. Mazzullo

# EXHIBIT D

1  Daniel H. Qualls, Bar No. 109036
2  Robin G. Workman, Bar No. 145810
   Aviva N. Roller, Bar No. 245415
3  **QUALLS & WORKMAN, LLP**
   244 California Street, Suite 410
4  San Francisco, CA 94111
   Telephone: (415) 782-3660
5  Facsimile: (415) 788-1028

6  *Attorneys for Plaintiff*

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10  MICHELLE ONYETTE MIKE and PARIS          )  Case No.  C 08-05374 PJH
    HILL, on behalf of themselves individually  )
11  of all others similarly situated,            )
                                                 )
12              Plaintiff,                        )
                                                 )  **PLAINTIFF PARIS HILL'S FIRST SET OF**
13          vs.                                   )  **INSPECTION DEMANDS TO**
                                                 )  **DEFENDANT KAISER FOUNDATION**
14  KAISER PERMANENTE, KAISER                    )  **HEALTH PLAN, INC.**
    FOUNDATION HEALTH PLAN, INC., aka            )
15  KAISER FOUNDATION HEALTH PLAN, and )
    DOES 1 through 100, INCLUSIVE                 )
16                                               )
                Defendant(s).
17
    _____
18  PROPOUNDING PARTY:    Plaintiff Paris Hill

19  RESPONDING PARTY:     Defendant Kaiser Foundation Health Plan, Inc.

20  SET:                  One

21

22          Pursuant to Federal Rules of Civil Procedure, Rule 34, Plaintiff Paris Hill ("HILL") hereby

23  requests that Defendant Kaiser Foundation Health Plan, Inc., ("KAISER") identify, produce and

24  permit for inspection and copying the below listed documents that are in the possession, custody, or

25  control of KAISER pursuant to the instructions and definitions contained herein.

26          The written responses and documents must be produced within thirty (30) days from the date

27  of service, plus an additional five (5) days if service of this demand is made by mail, pursuant to

28  Federal Rules of Civil Procedure, Rule 34.

INSPECTION DEMANDS 1                    -1-              3169\DISCOVERY\DSETONE.DOC

## DEFINITIONS

1.    The terms **"YOU,"** **"YOUR"** or **"YOURS"** refer to KAISER and, if applicable, the agents, employees, officers, and directors of same or of any subsidiary or divisions thereof, and their attorneys and those persons employed by their attorneys.

2.    The terms **"DOCUMENT"** or **"DOCUMENTS"** shall mean any tangible thing upon which any expression, communication or representation has been recorded by any means including, but not limited to, **"COMPUTER RECORDS," "E-MAIL RECORDS,"** handwriting, typewriting, printing, photostating, photographing, audiotaping, videotaping, magnetic impulse, or mechanical or electronic recording and any nonidentical copies (whether different from the original because of notes made on such copies, because of indications that said copies were sent to different individuals than were the originals, or because of any other reason), including but not limited to working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, scripts, records of any sort of meetings, invoices, financial statements, financial calculations, diaries, reports of telephone or other oral conversations, desk calendars, appointment books, audio or video tape recordings, microfilm, microfiche, computer tape, computer disk, computer printout, computer card, and all other writings and recordings of every kind that are in your actual or constructive possession, custody or control.

3.    **"COMPUTER RECORDS"** shall mean any tangible thing upon which any expression, communication or representation has been recorded by any means including, but not limited to, network server storage, backup storage, online server storage, microfilm, microfiche, computer tape, computer disk, computer floppy diskette, computer printout, computer card, computer hard drive, computer floppy drive, removable computer drive storage, scanner, computer facsimile, printing, photostating, photographing, video recording, audio recording, magnetic impulse, or other means of electronic recording and any nonidentical copies (whether different from the original because of notes made on such copies, because of indications that said copies were sent to different individuals than were the originals, or because of any other reason), including but not limited to working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, scripts, records of any sort of meetings, invoices, financial statements, financial calculations, diaries,

1  reports of telephone or other oral conversations, calendars, task schedulers, audio or video recordings,

2  and all other writings and recordings of every kind that are in your actual or constructive possession,

3  custody or control.

4       4.      **"E-MAIL RECORDS"** shall mean any and all tangible thing upon which any

5  expression, communication or representation has been recorded by any means including, but not

6  limited to, any form of electronic mail, Internet online e-mail, any form of interoffice and/or

7  intraoffice network e-mail, printouts of documents from Internet online e-mail or interoffice and

8  intraoffice network e-mail, including any copies which may be stored electronically in any manner

9  including, but not limited to, network server storage, backup storage, online server storage,

10  microfilm, microfiche, computer tape, computer disk, computer floppy diskette, computer printout,

11  computer card, computer hard drive, computer floppy drive, removable computer drive storage,

12  scanner, computer facsimile, printing, photostating, photographing, video recording, audio recording,

13  magnetic impulse, or other means of electronic recording and any nonidentical copies (whether

14  different from the original because of notes made on such copies, because of indications that said

15  copies were sent to different individuals than were the originals, or because of any other reason),

16  including but not limited to working papers, preliminary, intermediate or final drafts, correspondence,

17  memoranda, charts, notes, scripts, records of any sort of meetings, invoices, financial statements,

18  financial calculations, diaries, reports of telephone or other oral conversations, calendars, task

19  schedulers, audio or video recordings, and all other writings and recordings of every kind that are in

20  your actual or constructive possession, custody or control.

21       5.      To **"IDENTIFY"** documents means to provide a brief description of each document

22  sufficient to support a request for production, including at least the type of document, date of the

23  document, identification of the author and recipient (if any), all persons who received or saw copies.

24       6.      To **"IDENTIFY"** a person means to state the person's name and business address,

25  and additionally, in the case of a natural person, his home address, occupation or job title and

26  employer both presently and at the time to which the interrogatory relates and such other information

27  as should be sufficient to notice the deposition of such person and to serve such person with a

28  subpoena.

7.    As used herein, the term "**ALL**" is synonymous with "**ANY**" and the term "**OR**" means "**AND/OR**."

8.    As used herein, the terms "**REGARDING,**" "**REFER,** or "**RELATE**" means relating to, referring to, pertaining to, reflecting, substantiating, evidencing, constituting, or in any manner whatsoever logically or factually connected with the matter referenced, whether in whole or in part.

9.    As used herein, the term "**TIME RECORDS**" **REFERS TO ANY AND ALL DOCUMENTS** reflecting time entries regarding **ANY AND ALL** work performed, including but not limited to time sheets, computer printouts, data stored on a computer hard drive, or computer disk.

## INSTRUCTIONS

1.    This request requires you to produce all documents that are in your actual or constructive possession, custody or control or that are in the possession, custody or control of your attorneys, accountants, representatives, consultants, agents, employees, or anyone else acting on your behalf.

2.    If any requested document was, but is no longer in your possession, you must specify in writing and serve upon the undersigned a list indicating the identity of such documents. Such identification should, for each such document, set forth whether the document (i) has been destroyed, (ii) has been lost, misplaced, or stolen, or (iii) has never been or is no longer, in your possession, custody, or control, in which case the name and address of any person or entity known or believed by you to have possession, custody, or control of that document or category of documents should be identified. In each such instance, explain the circumstances surrounding the disposition and state the date or approximate date of such disposition and the identity of all persons who you believe to have knowledge of such disposition.

3.    If you withhold any of the requested documents from production under a claim of privilege or other protection, you must serve the undersigned a list of such withheld documents indicating, for each document withheld, the following information: (i) the date composed or date appearing on the document; (ii) the author; (iii) the number of pages; (iv) the number of copies made; (v) the identity of all persons or entities who saw the original document or saw or received a copy of

1   such document, and the job titles of each such person; (vi) the subject matter; and (vii) the basis for

2   the claim of privilege.

3       4.      This request requires the production of documents either in the same form or in the

4   same order as they are kept in the usual course of business or organized and labeled to correspond

5   with the particular demands set forth below.  If you choose the former method, the documents are to

6   be produced in the boxes, file folders, bindings or other containers in which the documents are found.

7   The titles, labels, or other descriptions on the boxes, file folders, bindings or other containers are to be

8   left intact.

9                           **INSPECTION DEMANDS**

10  **INSPECTION DEMAND NO. 1:**

11      **ALL DOCUMENTS REFERRING OR RELATING** to Paris Hill.

12

13  Date:   March 16, 2009                    QUALLS & WORKMAN, L.L.P.

14

15                                  By:  _____

16                                      Robin G. Workman
                                        Attorney for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

INSPECTION DEMANDS 1                -5-            3169\DISCOVERY\IDSETONE.DOC

PROOF OF SERVICE

1

2    I, Tammy M. Mazzullo, hereby declare:

3      I am employed in the City and County of San Francisco, California in the office of

4 a member of the bar of this court at whose direction the following service was made. I

5 am over the age of eighteen years and not a party to the within action. My business

6 address is Qualls & Workman, L.L.P., 244 California Street, Suite 410, San Francisco,

7 California. On March 16, 2009, I served **PLAINTIFF PARIS HILL'S FIRST SET OF**

8 **INSPECTION DEMANDS TO DEFENDANT KAISER FOUNDATION HEALTH PLAN,**

9 **INC.** on the interested parties in this action via mail by placing a true copy thereof, on

10 the above date, enclosed in a sealed envelope following the ordinary business practice of

11 Qualls & Workman, for collection and mailing in the United States mail addressed as set

12 forth below:

Lorraine H. O'Hara, Esq.
Seyfarth Shaw, LLP
2029 Century Park East
Los Angeles, California 90067

13

14

15

16      I am personally and readily familiar with the business practice of Qualls &

17 Workman for collection and processing of documents for mailing with the U.S. Postal

18 Service, pursuant to which mail placed for collection at designated stations in the

19 ordinary course of business is deposited the same day, proper postage prepaid, with the

20 U.S. Postal Service.

21      I declare under penalty of perjury under the laws of the State of California that

22 the foregoing is true and correct, and that this declaration was executed on

23 March 16, 2009, in San Francisco, California.

24

25                                Tammy M. Mazzullo

26

27

28

# EXHIBIT E

1   Daniel H. Qualls, Bar No. 109036
2   Robin G. Workman, Bar No. 145810
    Aviva N. Roller, Bar No. 245415
3   **QUALLS & WORKMAN, LLP**
    244 California Street, Suite 410
4   San Francisco, CA 94111
    Telephone: (415) 782-3660
5   Facsimile: (415) 788-1028

6   *Attorneys for Plaintiff*

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10  MICHELLE ONYETTE MIKE and PARIS          ) Case No. C 08-05374 PJH
    HILL, on behalf of themselves individually )
11  of all others similarly situated,          )
                                               )
12              Plaintiff,                      )
                                               ) **PLAINTIFF MICHAEL WILLIAMS'**
13      vs.                                     ) **FIRST SET OF INSPECTION DEMANDS**
                                               ) **TO DEFENDANT KAISER FOUNDATION**
14  KAISER PERMANENTE, KAISER                  ) **HEALTH PLAN, INC.**
    FOUNDATION HEALTH PLAN, INC., aka          )
15  KAISER FOUNDATION HEALTH PLAN, and )
    DOES 1 through 100, INCLUSIVE
16
                Defendant(s).
17

18  PROPOUNDING PARTY:    Plaintiff Michael Williams

19  RESPONDING PARTY:     Defendant Kaiser Foundation Health Plan, Inc.

20  SET:                  One

21

22      Pursuant to Federal Rules of Civil Procedure, Rule 34, Plaintiff Michael Williams

23  ("WILLIAMS") hereby requests that Defendant Kaiser Foundation Health Plan, Inc., ("KAISER")

24  identify, produce and permit for inspection and copying the below listed documents that are in the

25  possession, custody, or control of KAISER pursuant to the instructions and definitions contained

26  herein.

27

28

    INSPECTION DEMANDS 1                 -1-              3169\DISCOVERY\IDSETONE.DOC

1    The written responses and documents must be produced within thirty (30) days from the date

2    of service, plus an additional five (5) days if service of this demand is made by mail, pursuant to

3    Federal Rules of Civil Procedure, Rule 34.

4                                          **DEFINITIONS**

5        1.      The terms **"YOU,"** **"YOUR"** or **"YOURS"** refer to KAISER and, if applicable, the

6    agents, employees, officers, and directors of same or of any subsidiary or divisions thereof, and their

7    attorneys and those persons employed by their attorneys.

8        2.      The terms **"DOCUMENT"** or **"DOCUMENTS"** shall mean any tangible thing upon

9    which any expression, communication or representation has been recorded by any means including,

10   but not limited to, **"COMPUTER RECORDS," "E-MAIL RECORDS,"** handwriting, typewriting,

11   printing, photostating, photographing, audiotaping, videotaping, magnetic impulse, or mechanical or

12   electronic recording and any nonidentical copies (whether different from the original because of notes

13   made on such copies, because of indications that said copies were sent to different individuals than

14   were the originals, or because of any other reason), including but not limited to working papers,

15   preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, scripts, records

16   of any sort of meetings, invoices, financial statements, financial calculations, diaries, reports of

17   telephone or other oral conversations, desk calendars, appointment books, audio or video tape

18   recordings, microfilm, microfiche, computer tape, computer disk, computer printout, computer card,

19   and all other writings and recordings of every kind that are in your actual or constructive possession,

20   custody or control.

21       3.      **"COMPUTER RECORDS"** shall mean any tangible thing upon which any

22   expression, communication or representation has been recorded by any means including, but not

23   limited to, network server storage, backup storage, online server storage, microfilm, microfiche,

24   computer tape, computer disk, computer floppy diskette, computer printout, computer card, computer

25   hard drive, computer floppy drive, removable computer drive storage, scanner, computer facsimile,

26   printing, photostating, photographing, video recording, audio recording, magnetic impulse, or other

27   means of electronic recording and any nonidentical copies (whether different from the original

28   because of notes made on such copies, because of indications that said copies were sent to different

1   individuals than were the originals, or because of any other reason), including but not limited to

2   working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes,

3   scripts, records of any sort of meetings, invoices, financial statements, financial calculations, diaries,

4   reports of telephone or other oral conversations, calendars, task schedulers, audio or video recordings,

5   and all other writings and recordings of every kind that are in your actual or constructive possession,

6   custody or control.

7        4.     **"E-MAIL RECORDS"** shall mean any and all tangible thing upon which any

8   expression, communication or representation has been recorded by any means including, but not

9   limited to, any form of electronic mail, Internet online e-mail, any form of interoffice and/or

10   intraoffice network e-mail, printouts of documents from Internet online e-mail or interoffice and

11   intraoffice network e-mail, including any copies which may be stored electronically in any manner

12   including, but not limited to, network server storage, backup storage, online server storage,

13   microfilm, microfiche, computer tape, computer disk, computer floppy diskette, computer printout,

14   computer card, computer hard drive, computer floppy drive, removable computer drive storage,

15   scanner, computer facsimile, printing, photostating, photographing, video recording, audio recording,

16   magnetic impulse, or other means of electronic recording and any nonidentical copies (whether

17   different from the original because of notes made on such copies, because of indications that said

18   copies were sent to different individuals than were the originals, or because of any other reason),

19   including but not limited to working papers, preliminary, intermediate or final drafts, correspondence,

20   memoranda, charts, notes, scripts, records of any sort of meetings, invoices, financial statements,

21   financial calculations, diaries, reports of telephone or other oral conversations, calendars, task

22   schedulers, audio or video recordings, and all other writings and recordings of every kind that are in

23   your actual or constructive possession, custody or control.

24        5.     To **"IDENTIFY"** documents means to provide a brief description of each document

25   sufficient to support a request for production, including at least the type of document, date of the

26   document, identification of the author and recipient (if any), all persons who received or saw copies.

27        6.     To **"IDENTIFY"** a person means to state the person's name and business address,

28   and additionally, in the case of a natural person, his home address, occupation or job title and

1   employer both presently and at the time to which the interrogatory relates and such other information

2   as should be sufficient to notice the deposition of such person and to serve such person with a

3   subpoena.

4        7.      As used herein, the term **"ALL"** is synonymous with **"ANY"** and the term **"OR"**

5   means **"AND/OR."**

6        8.      As used herein, the terms **"REGARDING," "REFER,** or **"RELATE"** means

7   relating to, referring to, pertaining to, reflecting, substantiating, evidencing, constituting, or in any

8   manner whatsoever logically or factually connected with the matter referenced, whether in whole or

9   in part.

10       9.      As used herein, the term **"TIME RECORDS" REFERS TO ANY AND ALL**

11   **DOCUMENTS** reflecting time entries regarding **ANY AND ALL** work performed, including but

12   not limited to time sheets, computer printouts, data stored on a computer hard drive, or computer disk.

13                                   **INSTRUCTIONS**

14       1.      This request requires you to produce all documents that are in your actual or

15   constructive possession, custody or control or that are in the possession, custody or control of your

16   attorneys, accountants, representatives, consultants, agents, employees, or anyone else acting on your

17   behalf.

18       2.      If any requested document was, but is no longer in your possession, you must specify

19   in writing and serve upon the undersigned a list indicating the identity of such documents. Such

20   identification should, for each such document, set forth whether the document (i) has been destroyed,

21   (ii) has been lost, misplaced, or stolen, or (iii) has never been or is no longer, in your possession,

22   custody, or control, in which case the name and address of any person or entity known or believed by

23   you to have possession, custody, or control of that document or category of documents should be

24   identified. In each such instance, explain the circumstances surrounding the disposition and state the

25   date or approximate date of such disposition and the identity of all persons who you believe to have

26   knowledge of such disposition.

27       3.      If you withhold any of the requested documents from production under a claim of

28   privilege or other protection, you must serve the undersigned a list of such withheld documents

1  indicating, for each document withheld, the following information: (i) the date composed or date

2  appearing on the document; (ii) the author; (iii) the number of pages; (iv) the number of copies made;

3  (v) the identity of all persons or entities who saw the original document or saw or received a copy of

4  such document, and the job titles of each such person; (vi) the subject matter; and (vii) the basis for

5  the claim of privilege.

6      4.    This request requires the production of documents either in the same form or in the

7  same order as they are kept in the usual course of business or organized and labeled to correspond

8  with the particular demands set forth below.  If you choose the former method, the documents are to

9  be produced in the boxes, file folders, bindings or other containers in which the documents are found.

10  The titles, labels, or other descriptions on the boxes, file folders, bindings or other containers are to be

11  left intact.

12                         **INSPECTION DEMANDS**

13  **INSPECTION DEMAND NO. 1:**

14      **ALL DOCUMENTS REFERRING OR RELATING** to Michael Williams.

15

16  Date:  March 16, 2009               QUALLS & WORKMAN, L.L.P.

17

18                      By:

19                          Robin G. Workman
                        Attorney for Plaintiff

20

21

22

23

24

25

26

27

28

1        <u>PROOF OF SERVICE</u>

2        I, Tammy M. Mazzullo, hereby declare:

3        I am employed in the City and County of San Francisco, California in the office of

4    a member of the bar of this court at whose direction the following service was made.  I

5    am over the age of eighteen years and not a party to the within action.  My business

6    address is Qualls & Workman, L.L.P., 244 California Street, Suite 410, San Francisco,

7    California. On March 16, 2009, I served **PLAINTIFF MICHAEL WILLIAMS' FIRST SET**

8    **OF INSPECTION DEMANDS TO DEFENDANT KAISER FOUNDATION HEALTH**

9    **PLAN, INC.** on the interested parties in this action via mail by placing a true copy

10   thereof, on the above date, enclosed in a sealed envelope following the ordinary

11   business practice of Qualls & Workman, for collection and mailing in the United States

12   mail addressed as set forth below:

                        Lorraine H. O'Hara, Esq.
13                          Seyfarth Shaw, LLP
                           2029 Century Park East
14                        Los Angeles, California 90067

15

16       I am personally and readily familiar with the business practice of Qualls &

17   Workman for collection and processing of documents for mailing with the U.S. Postal

18   Service, pursuant to which mail placed for collection at designated stations in the

19   ordinary course of business is deposited the same day, proper postage prepaid, with the

20   U.S. Postal Service.

21       I declare under penalty of perjury under the laws of the State of California that

22   the foregoing is true and correct, and that this declaration was executed on

23   March 16, 2009, in San Francisco, California.

24

25                                          Tammy M. Mazzullo

26

27

28

# EXHIBIT F

1  Daniel H. Qualls, Bar No. 109036
   Robin G. Workman, Bar No. 145810
2  **QUALLS & WORKMAN, LLP**
   244 California Street, Suite 410
3  San Francisco, CA 94111
   Telephone: (415) 782-3660
4  Facsimile: (415) 788-1028

5  *Attorneys for Plaintiff*

6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10 MICHELLE ONYETTE MIKE and PARIS HILL, on )   No.   C 08-05374 PJH
   behalf of themselves individually            )
11 of all others similarly situated,            )   **PLAINTIFF MICHELLE O. MIKE'S**
                                                 )   **FIRST SET OF INTERROGATORIES**
12            Plaintiff,                         )   **TO DEFENDANT KAISER**
                                                 )   **FOUNDATION HEALTH PLAN, INC.**
13       vs.                                     )
                                                 )   **F.R.C.P. 33**
14 KAISER PERMANENTE, KAISER FOUNDATION )
   HEALTH PLAN, INC., aka KAISER                 )
15 FOUNDATION HEALTH PLAN, and DOES 1            )
   through 100, INCLUSIVE                        )
16
            Defendant(s).
17       _____

18

19 PROPOUNDING PARTY:    Plaintiff Michelle O. Mike

20 RESPONDING PARTY:     Defendant Kaiser Foundation Health Plan, Inc.

21 SET:                  One

22

23

24

25

26

27

28

INTERROGATORIES                    -1-                3169\DISCOVERY\ROGS1.DOC

1           Pursuant to Federal Rules of Civil Procedure, Rule 33, Plaintiff Michelle O. Mike

2   ("MIKE") hereby requests that Defendant Kaiser Foundation Health Plan, Inc. ("KAISER") answer

3   in writing and under oath the following interrogatories:

4

5   **INTERROGATORY NO. 1:**

6           **IDENTIFY** the **CONTACT INFORMATION** of **ALL PERSONS** employed by **YOU** as

7   Project Managers I and II working on the Kaiser Health Connect Project in California from

8   November 26, 2004, **AND** the present. (The term **"CONTACT INFORMATION"** refers to the

9   name, address, email address and telephone number)   (The term **"PERSON"** refers both to natural

10  persons and to corporate or other business entities such as a firm, partnership, proprietorship,

11  association or any other organization or entity).  (To **"IDENTIFY"** a **PERSON** means to state the

12  person's name and business address, and additionally, in the case of a natural person, his home

13  address, e-mail, occupation or job title and employer both presently and at the time to which the

14  interrogatory relates and such other information as should be sufficient to notice the deposition of

15  such person and to serve such person with a subpoena). (To **"IDENTIFY ALL DOCUMENTS"**

16  means to provide a brief description of each document sufficient to support a request for production,

17  including at least the type of document, date of the document, identification of the author and

18  recipient (if any), all persons who received or saw copies). (The terms **"DOCUMENT"** or

19  **"DOCUMENTS"** shall mean any tangible thing upon which any expression, communication or

20  representation has been recorded by any means including, but not limited to, **"COMPUTER**

21  **RECORDS," "E-MAIL RECORDS,"** handwriting, typewriting, printing, Photostatting,

22  photographing, audio taping, videotaping, magnetic impulse, or mechanical or electronic recording

23  and any nonidentical copies (whether different from the original because of notes made on such

24  copies, because of indications that said copies were sent to different individuals than were the

25  originals, or because of any other reason), including but not limited to working papers, preliminary,

26  intermediate or final drafts, correspondence, memoranda, charts, notes, scripts, records of any sort of

27  meetings, invoices, financial statements, financial calculations, diaries, reports of telephone or other

28  oral conversations, desk calendars, appointment books, audio or video tape recordings, microfilm,

1    microfiche, computer tape, computer disk, computer printout, computer card, and all other writings

2    and recordings of every kind that are in **YOUR** actual or constructive possession, custody or control.

3    The term **"COMPUTER RECORDS"** shall mean any tangible thing upon which any expression,

4    communication or representation has been recorded by any means including, but not limited to,

5    network server storage, backup storage, online server storage, microfilm, microfiche, computer tape,

6    computer disk, computer floppy diskette, computer printout, computer card, computer hard drive,

7    computer floppy drive, removable computer drive storage, scanner, computer facsimile, printing,

8    Photostatting, photographing, video recording, audio recording, magnetic impulse, or other means of

9    electronic recording and any nonidentical copies (whether different from the original because of notes

10   made on such copies, because of indications that said copies were sent to different individuals than

11   were the originals, or because of any other reason), including but not limited to working papers,

12   preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, scripts, records

13   of any sort of meetings, invoices, financial statements, financial calculations, diaries, reports of

14   telephone or other oral conversations, calendars, task schedulers, audio or video recordings, and all

15   other writings and recordings of every kind that are in **YOUR** actual or constructive possession,

16   custody or control.  The term **"E-MAIL RECORDS"** shall mean any and all tangible thing upon

17   which any expression, communication or representation has been recorded by any means including,

18   but not limited to, any form of electronic mail, Internet online e-mail, any form of interoffice and/or

19   intraoffice network e-mail, printouts of documents from Internet online e-mail or interoffice and

20   intraoffice network e-mail, including any copies which may be stored electronically in any manner

21   including, but not limited to, network server storage, backup storage, online server storage,

22   microfilm, microfiche, computer tape, computer disk, computer floppy diskette, computer printout,

23   computer card, computer hard drive, computer floppy drive, removable computer drive storage,

24   scanner, computer facsimile, printing, Photostatting, photographing, video recording, audio

25   recording, magnetic impulse, or other means of electronic recording and any nonidentical copies

26   (whether different from the original because of notes made on such copies, because of indications that

27   said copies were sent to different individuals than were the originals, or because of any other reason),

28   including but not limited to working papers, preliminary, intermediate or final drafts, correspondence,

INTERROGATORIES                           -3-                    3169\DISCOVERY\ROGS1.DOC

1   memoranda, charts, notes, scripts, records of any sort of meetings, invoices, financial statements,

2   financial calculations, diaries, reports of telephone or other oral conversations, calendars, task

3   schedulers, audio or video recordings, and all other writings and recordings of every kind that are in

4   **YOUR** actual or constructive possession, custody or control). (The terms **"YOU," "YOUR"** or

5   **"YOURS"** refer to Kaiser and, if applicable, the agents, employees, officers, and directors of same

6   or of any subsidiary or divisions thereof, and their attorneys and those persons employed by their

7   attorneys.) (As used herein, the term **"ALL"** is synonymous with **"ANY"** and the term **"OR"**

8   means **"AND/OR"**).(As used herein, the term **"REGARDING"** means relating to, referring to,

9   pertaining to, reflecting, substantiating, evidencing, constituting, or in any manner whatsoever

10  logically or factually connected with the matter referenced, whether in whole or in part.)

11  **INTERROGATORY NO. 2:**

12       **IDENTIFY** the period of employment for each **PERSON** identifed in repsonse to

13  Interrogatory No. 1.

14  **INTERROGATORY NO. 3:**

15       **IDENTIFY** the rate of pay for each **PERSON** identified in response to Interrogatory No.

16  1.

17  **INTERROGATORY NO. 4:**

18       Do **YOU** contend that **PERSONS** employed by **YOU** in California as Project Managers I

19  and II working on the Kaiser Health Connect Project between November 26, 2004, **AND** the

20  present are exempt from the requirement to pay overtime wages under California law?

21  **INTERROGATORY NO. 5:**

22       If YOU contend that **PERSONS** employed by **YOU** in California as Project Managers I and

23  II working on the Kaiser Health Connect Project between November 26, 2004, **AND** the present

24  are exempt from the requirement to pay overtime wages under California law, **IDENTIFY ALL**

25  facts upon which **YOU** base **YOUR** contention.

26  **INTERROGATORY NO. 6:**

27       If YOU contend that **PERSONS** employed by **YOU** in California as Project Managers I and

28  II working on the Kaiser Health Connect Project between November 26, 2004, **AND** the present

1   are exempt from the requirement to pay overtime wages under California law, **IDENTIFY** the

2   exemption that **YOU** believe applies.

3

4   Date:  March 16, 2009                                    QUALLS & WORKMAN, LLP

5

6

7                                                            _____
                                                            Robin G. Workman
8                                                           Attorney For Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INTERROGATORIES                            -5-                    3169\DISCOVERY\ROGS1.DOC

<u>PROOF OF SERVICE</u>

I, Tammy M. Mazzullo, hereby declare:

I am employed in the City and County of San Francisco, California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Qualls & Workman, L.L.P., 244 California Street, Suite 410, San Francisco, California. On March 16, 2009, I served **PLAINTIFF MICHELLE O. MIKE'S FIRST SET OF INTERROGATORIES TO DEFENDANT KAISER FOUNDATION HEALTH PLAN, INC.** on the interested parties in this action via mail by placing a true copy thereof, on the above date, enclosed in a sealed envelope following the ordinary business practice of Qualls & Workman, for collection and mailing in the United States mail addressed as set forth below:

> Lorraine H. O'Hara, Esq.
> Seyfarth Shaw, LLP
> 2029 Century Park East
> Los Angeles, California 90067

I am personally and readily familiar with the business practice of Qualls & Workman for collection and processing of documents for mailing with the U.S. Postal Service, pursuant to which mail placed for collection at designated stations in the ordinary course of business is deposited the same day, proper postage prepaid, with the U.S. Postal Service.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on March 16, 2009, in San Francisco, California.

Tammy M. Mazzullo