Daniel H. Qualls, Bar No. 109036
Robin G. Workman, Bar No. 145810
Aviva N. Roller, Bar No. 245415
**QUALLS & WORKMAN, LLP**
244 California Street, Suite 410
San Francisco, CA 94111
Telephone: (415) 782-3660
Facsimile: (415) 788-1028

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE ONYETTE MIKE, PARIS HILL, and MICHAEL WILLIAMS on behalf of themselves individually and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>KAISER PERMANENTE, KAISER FOUNDATION HEALTH PLAN, INC., aka KAISER FOUNDATION HEALTH PLAN, and DOES 1 through 50, INCLUSIVE<br><br>        Defendant(s) | No.  C 08-5374 PJH<br><br>**PLAINTIFFS' APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR ORDER:**<br><br>a) **GRANTING FINAL APPROVAL OF CLASS SETTLEMENT;**<br><br>b) **APPROVING REQUEST FOR ATTORNEYS' FEES AND COSTS; AND,**<br><br>c) **APPROVING REQUEST FOR INCENTIVE PAYMENT TO CLASS REPRESENTATIVES MIKE, HILL, AND WILLIAMS.**<br><br>**DATE:**     12/9/09<br>**TIME:**     9:00 a.m.<br>**CTRM:**   3 |

APPLICATION FOR FINAL APPROVAL

# **TABLE OF CONTENTS**

**Page(s)**

NOTICE ............................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................1

I. INTRODUCTION ........................................................................................1

II. THE SETTLEMENT BEFORE THE COURT ..............................................2

III. THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT FINAL APPROVAL ....................................................5

IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..............7

    A. The Test for Fairness ........................................................................7

    B. The Settlement Satisfies the Test for Fairness ..................................8

        1. The Investigation and Discovery are Sufficient to Allow Counsel and the Court to Act Intelligently ..................................8

        2. The Parties Reached The Settlement Through Arm's Length Bargaining ......................................................................11

        3. Counsel are Experienced in Similar Litigation .........................12

        4. There Are No Objectors to the Settlement and Few Exclusions ..............12

        5. The Risk, Expense, Complexity, and Likely Duration of Further Litigation ..................................................................13

        6. The Amount Offered in Settlement ..........................................14

V. CLASS COUNSEL'S FEES AND COST AWARD IS PROPERLY CALCULATED AS A PERCENTAGE OF THE TOTAL VALUE CREATED FOR THE BENEFIT OF THE CLASS........................................15

    A. Evolution of the Percentage Method........................................................16

    B. The Award is Supported By: 1) The Results Achieved; 2) The Risk; 3) The Skill Required; 4) The Contingent Nature of the Fee; and, 5) Awards In Similar Cases ..................................................................18

        1. The Results Achieved ..............................................................18

        2. Risks of Litigation ..................................................................19

        3. The Skill Required and the Quality of Work ............................20

        4. The Contingent Nature of the Fee and the Financial Burden ...................21

5.   Awards in Similar Cases .........................................................................23

C.   Class Counsel's Expenses Are Reasonable .........................................................24

D.   The Class Representatives Should Receive the Requested Service Awards ........24

VI.   CONCLUSION................................................................................................................25

1

## **TABLE OF AUTHORITIES**

**Page(s)**

2

### **CASES**

3

4   In re Activision Securities Litigation, 723 F. Supp. 1373 (9th Cir. 1989)......................................17

5   Arias v. Superior Court, 40 Cal. 4th 969 (2009).............................................................................20

6   Armstrong v. Board of School Directors, 616 F.2d 305 (7th Cir. 1980) ..........................................7

7
    In re Austrian & German Bank Holocaust Litigation, 80 F. Supp. 2d 164 (S.D. N.Y. 2000).......12
8
9   Boeing v. Van Gemert, 444 U.S. 472 (1980)..........................................................................15, 17

10  Brotherton v. Cleveland, 141 F. Supp. 2d 907 (S.D. Ohio 2001)...................................................24

11  Central Railroad and Banking of Georgia v. Petus, 113 U.S. 116 (1885)................................15, 16

12  Cook v. Niedert, 142 F.3d 1004 (7th Cir. 1998)...........................................................................24

13
    Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977) ...........................................................................6
14
15  Dellmore v. Toys "R" Us, et al., Alameda County Superior Court, Case No. RG-07-
    306616 (filed May 30, 2008) ........................................................................................................23

16
17  In re Department Of Energy Stripper Well Exemption Litigation, 653 F. Supp. 108 (D.
    Kan. 1986)......................................................................................................................................6

18  Dudash v. Varnell Struck, et al., United States District Court, Central District, Case No. C-
19  04-02748 MHP, (filed June 27, 2008 ) ..........................................................................................23

20  In re Dun & Bradstreet Credit Services Customer Litigation, 130 F.R.D. 366 (S.D. Ohio
    1990) .............................................................................................................................................24
21
22  Dunbar v. Albertson's, Inc., 141 Cal. App. 4th 1422 (2006) ......................................................9, 19

23  Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240 (S.D. Ohio
    1991) .............................................................................................................................................24
24
25  Fisher Brothers v. Cambridge-Lee Industrial, Inc., 630 F. Supp. 482 (E.D. Pa. 1985)...................7

26  Florin v. Nations Bank of Georgia, 34 F.3d 560 (9th Cir. 1994).....................................................16

27  Glass v. UBS Finance Services, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 27, 2007) ......9, 14,
                                                                                                              19, 24
28

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998) ................................................................7

Heffelfinger v. Electric Data System Corp., 580 F. Supp. 2d 933 (C.D. Cal. 2008) ...............9, 19

In re Heritage Bond Litigation, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. 2005) ..........................6

In re Heritage Bond Litigation, U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ...................18

Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968) .............7

Ingram v. The Coca-Cola Co., 200 F.R.D. 685 (N.D. Ga. 2001) ..................................................24

Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322 (10th Cir. 1984) ...................................................5

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975) ...............................................16, 17

Kirkorian v. Borelli, 695 F. Supp. 446 (N.D. Cal. 1988) ................................................................7

Knight v. Red Door Salons, Inc., 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ..........23

Laskey v. Int'l Union, 638 F.2d 954 (6th Cir. 1981) ......................................................................12

Lindy Brothers Bldrs., Inc. of Phila. v. American R. & R. San. Corp., 487 F.2d 161 (3d
Cir. 1973) ...............................................................................................................................16, 17

Lindy Brothers Bldrs., Inc. of Phila. v. American R. & R. San. Corp., 540 F.2d 102 (3d
Cir. 1976) .......................................................................................................................................16

Lopez v. City of Santa Fe, 206 F.R.D. 285 (D.N.M. 2002) ..............................................................5

Lyons v. Marrud, Inc., [1972-1973 Transfer Binder] Fed. Sec. L. Rep. (CCH) Paragraph
93,525 (S.D.N.Y. 1972) ...................................................................................................................8

Marcus v. State of Kansas, 209 F. Supp. 2d 1179 (D. Kan. 2002) ...................................................5

McKittrick v. Gardner , 378 F.2d 872 (4th Cir.1967) ....................................................................21

In re Mego Financial Corp. Securities Litigation, 213 F.3d 454 (9th Cir. 2000) ..........................10

Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094 (2007) ............................................20

Officers for Justice v. Civil Service Com'n, 688 F.2d 615 (9th Cir. 1982) ..............................5, 6, 7

In re Omnivision Technologies, Inc., 559 F. Supp. 2d 1036 (N.D. Cal. 2007) .........................18, 19

Paul, Johnson, Alston & Hunt v. Gaulty, 886 F.2d 268 (9th Cir. 1989) .............................15, 17, 18

Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508 (N.D. Cal. 2008) ....................................9, 20

Powers v. Eichen, 229 F.3d 1249 (9th Cir. 2000)...........................................................................21

Reed v. General Motors Corp., 703 F.2d 170 (5th Cir. 1983).........................................................7

Romero v. Producers Dairy Foods, Inc., 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 14, 2007) ...........................................................................................................................................23

Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir. 1990).........................2

Steiner v. BOC Financial Corp., 1980 U.S. Dist. LEXIS 14561 (S.D.N.Y. 1980) .......................22

Stoetzner v. U.S. Steel Corp., 897 F.2d 115 (3d. Cir. 1990) .........................................................12

Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294 (N.D. Cal. 1995) ................................24

Vincent v. Hughes Air West, Inc., 557 F.2d 759 (9th Cir. 1977)...................................................15

Waits v. Weller, 653 F.2d 1288 (9th Cir. 1981) ..............................................................................6

In re Warner Communications Sec. Lit, 618 F. Supp. 735 (S.D. N.Y. 1985) ...........................2, 23

Weinberger v. Kendrick, 698 F.2d 61 (2d Cir. 1982)......................................................................7

Williams v. MGM-Pathe Communs. Co., 129 F.3d 1026 (9th Cir. 1997) .....................................17

Woo v. Home Loan Group, L.P, 2008 U.S. Dist. LEXIS 65144 (S.D. Cal. Aug. 25, 2008).........23

**STATUTES**

8 Cal. Code Regs. section 11040 tit. 8.......................................................................................9, 19

29 C.F.R. sections 541.201, 541.203 .........................................................................................9, 19

29 U.S.C. section 213(a)(1) .......................................................................................................9, 19

Fed. Rules Civ. Proc., Rule 23(e) ...................................................................................................5

**MISCELLANEOUS**

A. Conte, Attorney Fee Awards, 2d. Ed., § 104, at 6§§ ..........................................................15, 18

Manual for Complex Litigation (Herr, §147) ................................................................................16

Manual for Complex Litigation, Second §30.44 (1993)..................................................................5

Manual for Complex Litigation, § 30.42 ...................................................................24

Newberg on Class Actions (3d ed. 1992) § 11.41 ...............................................................5

Newberg on Class Actions, 3rd Ed., § 14.03, at 14-13§§...........................................................23

1

**NOTICE**

2  TO EACH PARTY AND THEIR ATTORNEYS OF RECORD:

3  PLEASE TAKE NOTICE that on December 9, 2009 at 9:00 a.m. before the Honorable

4  Phyllis J. Hamilton in Courtroom 3 of the United States District Court for the Northern District of

5  California, 1301 Clay Street, Oakland, California, Plaintiffs Michelle Mike, Paris Hill, and

6  Michael Williams will move and do hereby move for Final Approval of the proposed Class

7  Settlement in this case. Plaintiffs will also move and do hereby move for the Court to grant

8  Plaintiffs' requests for an award of attorneys' fees in the amount of $420,000, an award of

9  litigation costs in the amount of $21,660.83 and class representative enhancements in the amount

10  of $10,000 for each class representative. This motion is unopposed and based on the Stipulation

11  of Settlement for which the Court previously granted preliminary approval.

12  Plaintiffs also base the motion on this Notice, the Memorandum of Points and Authorities

13  filed herewith, the Declaration of Robin G. Workman and supporting exhibits filed herewith, the

14  complete files and records in this action, and such other argument and documents as may be

15  presented at the hearing on this Motion.

16

**MEMORANDUM OF POINTS AND AUTHORITIES**

17  **I.    INTRODUCTION**

18  Plaintiffs Michelle Mike, Paris Hill, and Michael Williams ("Plaintiffs") and Defendant

19  Kaiser Foundation Hospitals, Inc. ("Kaiser") reached a class action settlement for which this Court

20  granted preliminarily approval on September 9, 2009. By this motion, Plaintiffs seek final

21  approval of the proposed settlement and an order granting Plaintiffs' request for attorneys' fees,

22  litigation costs and class representative enhancements.

23  In accordance with the September 9, 2009, preliminary approval order, the claims

24  administrator, Rust Consulting, sent required notice of the proposed settlement to the settlement

25  class of 216 Project Manager ("PM") Is and IIs.[1] Class Member response to the proposed

26  settlement following preliminary approval supports Plaintiffs' request that the Court grant final

27

28  1 Declaration of Robin G. Workman in Support of Application for Final Approval ("Workman Final Approval Decl.")
¶ 3; Declaration of Caryn Donly of Rust Consulting ("Donly Decl.") ¶ 9.

1    approval of the proposed class settlement.  As of November 18, 2009, 169 Class Members, or over

2    78% of the class, filed claim forms to participate in the settlement, which constitutes claims for

3    83% of the available workweeks.[2]  Only five Class Members requested exclusion from the class

4    and no one filed an objection to the settlement.[3]

5          Plaintiffs also request that the Court approve an award of attorneys' fees of $420,000,

6    approve an award of costs of $21,660.83,[4] and approve incentive payments to Class

7    Representatives Mike, Hill, and Williams in the amount of $10,000 each.  Plaintiffs Mike, Hill,

8    and Williams provided critical assistance and important information and documents to Class

9    Counsel.  Given this assistance was invaluable to Class Counsel, and the requested enhancement

10   falls within that routinely awarded by the courts, Plaintiffs request that the Court award the

11   enhancement requested.  Class Counsel's attorneys' fee request equals 30% of the total settlement

12   of $1,400,000.  The requested attorneys' fee falls within that historically awarded by the federal

13   courts, 20% to 50% of the common fund, depending on the circumstances of the case, In re

14   Warner Communications Sec. Lit, 618 F. Supp. 735, 749-50 (S.D. N.Y. 1985), and the Ninth

15   Circuit's benchmark of 25% to 30% of a common fund and is fair compensation for undertaking

16   such complex, risky, and time-consuming litigation on a contingent basis.  See Six Mexican

17   Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).  As the attorneys' fees

18   requested are within the range of reasonableness and the results achieved for the Class Members

19   are excellent, Plaintiffs respectfully request that the Court award the requested attorneys' fees.

20   Given the costs requested are the costs actually incurred, Plaintiffs also request that the Court

21   grant the request of an award of costs of $21,660.83.

22   **II.    THE SETTLEMENT BEFORE THE COURT**

23         The Class Settlement Period is the period from November 25, 2004 through July 9, 2009.

24   In consideration for settlement of this Action and a release of the claims described in paragraph 8

25   of the Settlement Agreement, Kaiser agrees to pay a Gross Fund Value sum to the Class Members

26   not to exceed One Million, Four Hundred Thousand Dollars ($1,400,000) ("GFV"), less Class

27

28   2 Donly Decl. ¶ 15.
     3 Donly Decl. ¶ 16 & 17.
     4 Workman Decl. ¶ 5, Ex. A, setting forth all of the costs incurred in this matter.

1  Counsel's attorneys' fees, costs and expenses, the Named Plaintiffs' incentive awards, and the

2  costs of settlement administration. The Settlement Class consists of:

3      All persons employed by Kaiser Foundation Health Plan, Inc. or Kaiser Foundation
       Hospitals in California as Project Manager Is and/or IIs providing services in connection

4      with Kaiser's KP Health Connect program for the time period November 25, 2004 through
       July 9, 2009, except former employee Kimberly Wallace.[5]

5

6      The Claims Administrator, Rust Consulting, shall distribute the Net Fund Value ("NFV")

7  as follows:

8      Each participating Settlement Class Member ("Qualified Claimant") is entitled to a share

9  of the NFV. To the extent that Class Members opt out or members of the Settlement Class fail to

10  submit valid Claim Forms so as to become a Qualified Claimant, their shares of the NFV shall not

11  revert to Kaiser, but rather shall first be used to pay the employer's share of payroll taxes, with

12  Rust redistributing the balance to the Participating Class Members as part of the Settlement

13  Amount available for distribution.[6] The distribution of this excess unclaimed portion of the NFV

14  over and above the amount required to cover the employer's share of payroll taxes shall be

15  proportional to each class claimant's original provisional share of the NFV as per paragraph 12(c)

16  of the Settlement Agreement.[7]

17      As per paragraph 12(a) of the Settlement Agreement, Kaiser and its counsel will not

18  oppose an attorneys' fees award to Class Counsel of up to one-third (1/3rd) of the GFV to

19  compensate Class Counsel for all of the work already performed in this case and all of the work

20  remaining to be performed in documenting the Settlement, securing Court approval of the

21  Settlement, making sure that the Settlement is fairly administered and implemented and obtaining

22  dismissal of the action. The award Class Counsel requests, $420,000, is less than that allowed

23  under the Settlement Agreement, as it is only 30% of the GFV. Class Counsel will separately seek

24  recovery of their actual litigation costs.[8] This amount is $21,660.83.[9] Kaiser and its counsel agree

25

---

26  5 Settlement Agreement, ¶ 2, Ex. B to Declaration of Robin G. Workman filed in support of Application for
    Preliminary Approval ("Workman Prelim. Approval Decl.") Plaintiffs request the Court to take Judicial Notice of the
    Workman Prelim Approval Decl.

27  6 Id. Settlement Agreement, paragraph 12(d).
    7 Id. Settlement Agreement, paragraph 12(c).

28  8 Id. Settlement Agreement, paragraph 12(a).
    9 Workman Final Approval Decl. ¶ 5, Ex. A.

1   not to oppose this request.

2   As per paragraph 12(b) of the Settlement Agreement, Class Counsel will request that each

3   Class Representative receive an incentive award that Rust will deduct from the GFV, of $10,000

4   per Plaintiff for their services as Class Representatives, in addition to their individual claims for a

5   share to which they are otherwise entitled through the claims process. Kaiser and its counsel will

6   not oppose this request.[10]

7   As per paragraph 12(f) of the Settlement Agreement, the reasonable costs of the Claims

8   Administrator associated with the administration of this Settlement, not to exceed $25,000, will be

9   paid from the GFV. By its September 9, 2009 Order, the Court approved the appointment of Rust

10   Consulting as Claims Administrator.[11] Rust confirms that the costs of administration will not

11   exceed $25,000.[12]

12   Within ten (10) business days of final approval by the Court, Kaiser will deposit the GFV

13   into an interest-bearing account created by the Claims Administrator.[13] Settlement Payments to

14   Class Members will occur immediately after Kaiser funds the settlement, following the Effective

15   Date of final approval of the Settlement.[14]

16   The settlement is fair, adequate and reasonable to the class. This settlement, valued at $1.4

17   million, is an excellent result and provides the Class Members with the opportunity to receive a

18   substantial recovery of thousands of dollars to each claimant. As of November 18, 2009, the

19   average class member payout amount is approximately $4,783.66, with the highest payout being

20   approximately $14,780.45.[15] This result is particularly commendable in light of the fact that

21   Kaiser's timekeeping records depict that Class Members worked overtime hours during just 38%

22   of the class period.[16] The result is also exceptional given that liability in this case was far from

23   certain because Kaiser asserted at all times that some or all of the Class Members may have been

24

25

_____

10 Workman Prelim. Approval Decl., Ex. B, Settlement Agreement, paragraph 12(b).
26   11 Id. Settlement Agreement, paragraph 12(f).
12 Donly Decl. ¶ 19.
27   13 Id. Settlement Agreement, ¶12(d).
14 Id. Settlement Agreement, ¶12(e).
28   15 Donly Decl. 15¶.
16 Workman Prelim Approval Decl. ¶ 17.

1  exempt from overtime pay requirements.[17]

2  **III.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT FINAL APPROVAL**

3

4  When parties reach a proposed class-wide settlement, they must submit the settlement to

5  the court for approval. H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) at

6  §11.41, p.11. Court approval of a class settlement is considered at a final settlement approval

7  hearing, at which the parties may present evidence and argument concerning the fairness,

8  adequacy, and reasonableness of the settlement and the court may hear class members regarding

9  the settlement. See Manual for Complex Litigation, Second §30.44 (1993). During final

10  approval, the court must determine whether the settlement is fair, reasonable and adequate. See

11  Officers for Justice v. Civil Service Com'n, 688 F.2d 615, 625 (9th Cir. 1982); Fed. Rules Civ.

12  Proc., Rule 23(e). Governing the settlement of class actions, Rule 23(e)(2) provides:

13  > The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a
14  > proposed settlement, voluntary dismissal, or compromise...(2) If the proposal would bind class members, the court may approve it only after a hearing and finding it is fair,
15  > reasonable, and adequate.

16  The Court should approve a class action settlement where:   (1) the parties fairly and

17  honestly negotiated the proposed settlement; (2) serious questions of law and fact exist, placing

18  the ultimate outcome of the litigation in doubt; (3) the value of an immediate recovery outweighs

19  the mere possibility of future relief after protracted and expensive litigation; and, (4) the parties

20  determined that the settlement is fair and reasonable. Jones v. Nuclear Pharmacy, Inc., 741 F.2d

21  322, 324 (10th Cir. 1984); Marcus v. State of Kansas, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002);

22  Lopez v. City of Santa Fe, 206 F.R.D. 285, 288 (D.N.M. 2002). The Settlement in this case

23  satisfies each of the four criteria.

24  As discussed in detail below, the parties reached this Settlement through arms-length

25  negotiations and with the assistance of mediation conducted by the experienced mediator, David

26  Rotman, on July 9, 2009. Experienced counsel negotiated the Settlement while vigorously

27  protecting the interests of the Class Members. Complex legal and factual issues placed the

28

---

17 Workman Final Approval Decl. ¶ 9.

1    ultimate outcome of this litigation in doubt.  Accordingly, the immediate value of the settlement to

2    the Class Members far outweighs the possibility of relief if this protracted and expensive litigation

3    continued through trial and appeal.  The considered judgment of all parties to the Settlement is that

4    the Settlement is fair and reasonable in light of the immediate benefit provided by the Settlement

5    to the Class Members, which is a conclusion that the overwhelmingly positive response of the

6    Class Members reinforces.[18]

7           The courts favor settlements of disputed claims.  Waits v. Weller, 653 F.2d 1288, 1291

8    (9th Cir. 1981) ("settlement is encouraged in appropriate class action cases").  In evaluating

9    settlements, the courts recognize that compromise is particularly appropriate because such

10   litigation is difficult and notoriously uncertain.  The courts favor settlement especially in class

11   actions because it minimizes the litigation expenses of all parties and reduces the strain on judicial

12   resources.  Officers for Justice, 688 F.2d at 625 ("[V]oluntary conciliation and settlement are the

13   preferred means of dispute resolution.  This is especially true in complex class action

14   litigation[.]"); Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action

15   suits, there is an overriding public interest in favor of settlement."); In re Dept. Of Energy Stripper

16   Well Exemption Litig., 653 F. Supp. 108, 115 (D. Kan. 1986) ("It is in the interests of the courts

17   and the parties that there should be an end to litigation and the law favors the peaceful settlement

18   of controversies.")

19          "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated

20   between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

21   judgment that the agreement is not the product of fraud or overreaching by, or collusion between,

22   the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate

23   to all concerned." Officers for Justice, 688 F.2d at 625.  Under this standard, the court must decide

24   whether the proposed settlement falls within the range of reasonable settlements, taking into

25   account that settlements are compromises between the parties reflecting subjective, unquantifiable

26   judgments concerning the risks and possible outcomes of litigation.  Id.

27          In cases such as this one, the courts emphasize that there is a strong initial presumption that

28

---

18 Workman Final Approval Decl. ¶ 7; Donly Decl. ¶ 15.

1　the compromise is fair and reasonable. In re Heritage Bond Litig., 2005 U.S. Dist. LEXIS 13555,

2　*11 (C.D. Cal. 2005). Courts are advised not to adjudicate the merits of the action, substitute their

3　judgment for that of the parties who negotiated the settlement, or reopen and enter into

4　negotiations with the litigants in the hopes of improving the terms of the settlement. See Officers

5　for Justice, 688 F.2d at 625. The essential evaluation is whether, given the risks of litigation and

6　the range of probable results, the settlement, taken as a whole, is fair, reasonable and adequate to

7　all concerned. See id.; Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Here, the

8　facts and circumstances compel the conclusion that the proposed settlement satisfies that standard.

9　**IV.　THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

10　　　**A.　The Test for Fairness**

11　　　　To determine whether a proposed settlement is fair, reasonable, and adequate, courts

12　consider some or all of the following factors: "(1) the strength of plaintiffs' case; (2) the risk,

13　expense, complexity and likely duration of further litigation; (3) the risk of maintaining class

14　action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

15　completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence

16　of a governmental participant; and, (8) the reaction of the class members to the proposed

17　settlement." Officers for Justice, 688 F.2d at 625. The list of factors is not exhaustive and courts

18　should tailor the list to fit the facts of each case. Id. "Ultimately, the [trial] court's determination is

19　nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'"

20　Id. (internal citation omitted).

21　　　　The question whether a proposed settlement is fair, reasonable and adequate necessarily

22　requires the parties' attorneys to judge and evaluate "'the terms of the compromise with the likely

23　rewards of the litigation.'" Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982), (quoting

24　Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414,

25　424-25 (1968)). Therefore, many courts recognize that the opinion of experienced counsel

26　supporting the settlement is entitled to considerable weight. Kirkorian v. Borelli, 695 F. Supp.

27　446, 451 (N.D. Cal. 1988); Reed v. General Motors Corp., 703 F.2d 170, 175 (5th Cir. 1983);

28　Weinberger, 698 F.2d at 74; Armstrong v. Board of School Directors, 616 F.2d 305, 325 (7th Cir.

1   1980); Fisher Bros. v. Cambridge-Lee Indus., Inc., 630 F. Supp. 482, 489-490 (E.D. Pa. 1985).

2   For example, in Lyons v. Marrud, Inc., [1972-1973 Transfer Binder] Fed. Sec. L. Rep. (CCH)

3   Paragraph 93,525 (S.D.N.Y. 1972), the court noted that "[e]xperienced and competent counsel

4   have assessed these problems and the probability of success on the merits. They have concluded

5   that compromise is well-advised and necessary. The parties' decision regarding the respective

6   merits of their position has an important bearing on this case." Id. at ¶ 92,520.

7               **B.      The Settlement Satisfies the Test for Fairness**

8                         **1.     The Investigation and Discovery are Sufficient to Allow Counsel
                                   and the Court to Act Intelligently**
9

10      The stage of the proceedings at which the parties reached this settlement militates in favor

11  of final approval of the settlement. The agreement to settle did not occur until Class Counsel

12  possessed sufficient information to make an informed judgment regarding the likelihood of

13  success on the merits and the monetary results that Counsel could obtain through further litigation.

14  Class Counsel conducted a thorough investigation into the facts of the class action. Class Counsel

15  conducted formal and informal discovery and surveyed the class members. Prior to mediation,

16  counsel for Kaiser provided Class Counsel with access to Class Member data, including time

17  records, data reflecting the weeks worked by the Class Members and relevant salary information

18  for the positions at issue. This data enabled Class Counsel to evaluate the claims presented.[19]

19      During the relevant time period of 2004 through 2009, Kaiser was in the business of

20  providing medical insurance, billing, and services. To maintain a coordinated computer system

21  for Kaiser's business, entitled KP HealthConnect, Kaiser employed a substantial number of

22  employees to implement, train and maintain the KP HealthConnect system. When Kaiser

23  employed the PM Is and IIs, Kaiser designated these employees as "exempt" from overtime

24  compensation requirements under both California and federal law. Plaintiffs, who worked as PM

25  Is and IIs, filed this action on November 25, 2008. Plaintiffs' primary contention is that they and

26  Class Members are not exempt because they do not qualify for the "administrative" exemption and

27

28
_____

19 Workman Final Approval Decl. ¶ 8.

1    Kaiser therefore misclassified them.[20]

2         Kaiser's numerous defenses to the case created difficulties with proof and complex legal

3    issues for Class Counsel to overcome. Kaiser contended that it properly classified all Class

4    Members as exempt under the administrative exemption, claiming that the work Class Members

5    performed was directly related to management or general business operations within the meaning

6    of the language set forth in both Industrial Welfare Commission Wage Order 4-2001, 8 Cal. Code

7    Regs. section 11040 tit. 8, subd. 1(A)(2), 29 U.S.C. section 213(a)(1), and 29 C.F.R. sections

8    541.201, 541.203, and 541.402. Some courts hold that technology workers, like Plaintiffs and

9    Class Members here, are exempt under the administrative exemption. See Heffelfinger v. Elec.

10   Data Sys. Corp., 580 F. Supp. 2d 933, 958-966 (C.D. Cal. 2008).

11        To further complicate matters, Kaiser also contended that it properly classified some Class

12   Members as exempt under the executive exemption, as set forth in 8 Cal. Code Regs section

13   11040 tit. 8, subd. 1(A)(1) and 29 U.S.C. section 213(a)(1), creating problems both for class

14   certification and for Plaintiffs' assertions that all Class Members worked overtime without

15   receiving overtime wages. Courts confirm this dilemma. For example, the court in Dunbar v.

16   Albertson's, Inc., 141 Cal. App. 4th 1422, 1431-32 (2006), affirmed an order denying class

17   certification to a class of employees who claimed their employer denied them overtime pay,

18   holding that the issue of whether the executive exemption applied would have to be individually

19   determined for each class member. Kaiser also asserted class treatment would be inappropriate

20   because the Court would need to make individual inquiries into each Class Member's job duties

21   and hours worked.

22        All of these defenses were substantial, and any one of them could have resulted in the

23   Class receiving nothing if the parties litigated the claims. Kaiser also stated it would oppose class

24   certification and the risk existed that the Court would have denied class certification, particularly

25   given this Court's view regarding certification of class-wide meal period claims. See Perez v.

26   Safety-Kleen Systems, Inc., 253 F.R.D. 508, 512-515 (N.D. Cal. 2008).[21]

27   _____

28   20 Workman Final Approval Decl. ¶ 6.

     21 Workman Prelim. Approval Decl. ¶ 21.

     APPLICATION FOR FINAL APPROVAL          -9-          3169\SETTLEMENT\FINALAPPMOT.DOC

1    Recognizing the potential risks and after vigorous negotiations, the parties agreed to a

2    settlement of $1.4 million. As the federal court recently held in <u>Glass v. UBS Fin. Servs.</u>, 2007

3    U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 27, 2007), where the parties faced uncertainties similar to

4    those in this litigation:

5    > In light of the above-referenced uncertainty in the law, the risk, expense, complexity, and
     > likely duration of further litigation likewise favors the settlement. Regardless of how this
6    > Court might have ruled on the merits of the legal issues, the losing party likely would have
     > appealed, and the parties would have faced the expense and uncertainty of litigating an
7    > appeal. "The expense and possible duration of the litigation should be considered in
     > evaluating the reasonableness of [a] settlement." <u>See In re Mego Financial Corp.</u>
8    > <u>Securities Litigation</u>, 213 F.3d 454, 458 (9th Cir. 2000).

9    <u>Id.</u> at *12. Here, the risk of further litigation is substantial and militates in favor of

10   granting final approval of the settlement.

11   The parties researched and prepared lengthy mediation briefs. Plaintiffs hired a damage

12   calculation expert to prepare different calculations of the damages under possible outcome

13   scenarios.[22] During the mediation, which was both contentious and arms-length, Kaiser disputed

14   liability, especially whether the administrative and executive exemptions applied to the class

15   members, and disputed the number of overtime hours that Plaintiffs alleged they and other Project

16   Manager Is and IIs worked. Kaiser also disputed that the Plaintiffs could attain class certification,

17   arguing that the Court would need to determine the applicability of both exemptions based on each

18   class member's individual experience. While courts do certify overtime wage claims, class

19   certification here was by no means a foregone conclusion.[23]

20   Based on the complexity of the case, the novelty of the legal issues, the substantial risks

21   and uncertainty of the outcome on both liability and certification issues, Plaintiffs believe that the

22   result here is an excellent one and is both fair and in the best interests of the Class Members.

23   There can be no doubt that counsel for both parties possessed sufficient information to make an

24   informed judgment regarding the likelihood of success on the merits and the results that Plaintiffs

25   could obtain through further litigation, given the relative strengths and weaknesses of their

26   positions.[24]

27

28
22 Workman Final Approval Decl. ¶ 9; Workman Prelim. Approval Decl. ¶ 18-19.
23 Workman Final Approval Decl. ¶ 9.
24 Workman Final Approval Decl. ¶ 10.

1

### 2. The Parties Reached The Settlement Through Arm's Length Bargaining

2   This settlement was the result of arms-length negotiations between the parties, through

3   their respective attorneys. Through extensive formal and informal discovery procedures, Kaiser

4   disclosed confidential information relating to its organization, the employment positions at issue,

5   the size of the putative class, the overtime hours recorded, salary ranges, and the total number of

6   workweeks for the Class. After comprehensive legal and factual analysis, including Kaiser's

7   factual and legal defenses, Class Counsel possessed sufficient information for intelligent

8   evaluation of the case for purposes of settlement.[25]

9   Prior to the initiation of settlement discussions, Class Counsel reviewed and evaluated the

10  case based on the provided information, and determined the conditions of settlement that would be

11  fair and reasonable to the Class. Class Counsel is experienced in the types of settlement

12  appropriate to resolve overtime and rest and meal period claims, as Class Counsel regularly

13  litigates, tries, and settles other employment class actions, including several previous employment

14  actions against Kaiser.[26]

15  Following formal and informal discovery and discussions between counsel, the parties

16  agreed to mediation before David Rotman, one of the preeminent mediators for wage and hour

17  class actions. The all-day mediation session held on July 9, 2009 was intense, with neither side

18  giving ground throughout the entire day. Plaintiffs and Class Counsel believe that this settlement

19  is fair, reasonable and adequate. By reason of the settlement, Kaiser agreed to make a payment of

20  One Million, Four Hundred Thousand Dollars ($1.4 million) in full discharge of all claims

21  asserted in this action, without a reversion to Kaiser except for payment of taxes, as payment in

22  full of all claims arising from the events described in the Amended Complaint including Class

23  Counsel's attorneys' fees and costs, incentive awards for the Class Representatives, and the cost of

24  class notice and claims administration.

25  After the mediation, the parties had to negotiate the specific terms of the settlement before

26  the final written agreement could be signed. Even after the parties reached an agreement, Class

27

28  25 Workman Final Approval Decl. ¶ 8.
    26 Workman Prelim. Approval Decl. ¶ 24; Workman Final Approval Decl. ¶ 2.

1   Counsel had to ensure that the terms of the Settlement were fair to every member of the class and

2   contained the requisite opportunities for notice, exclusion, and objection in accordance with

3   federal class action law.[27]  This Court agreed with Class Counsel's assessment and, on September

4   9, 2009, granted preliminarily approved the class settlement, finding it to be fair, reasonable, and

5   adequate, and ordered that Rust disseminate notice of the proposed settlement to the members of

6   the Class.[28]

7                          **3.     Counsel are Experienced in Similar Litigation**

8           Class Counsel have extensive wage and hour class action experience and have represented

9   thousands of persons nationwide in such actions including both overtime and rest and meal period

10  cases.[29]  Class Counsel participated in every aspect of the settlement discussions and concluded

11  the settlement is fair, adequate and reasonable and in the best interests of the Class.[30]

12                          **4.     There Are No Objectors to the Settlement and Few Exclusions**

13          After dissemination of the class notice to the 216 members of the Class, which provided

14  each class member with the terms of the settlement, no class member filed an objection to the

15  settlement and only five class members opted out of the settlement.[31]  The absence of any objector

16  strongly supports the fairness, reasonableness and adequacy of the Settlement.  See In re Austrian

17  & German Bank Holocaust Litigation, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small

18  number of objections are received, that fact can be viewed as indicative of the adequacy of the

19  settlement."); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-119 (3d. Cir. 1990) (29 objections

20  out of 281 member class 'strongly favors settlement'); Laskey v. Int'l Union, 638 F.2d 954, 956

21  (6th Cir. 1981) (The fact that 7 out of 109 class members objected to the proposed settlement

22  should be considered when determining fairness of settlement.)

23          Importantly, every Class Member received the opportunity to participate in the Settlement

24  under the same terms.  Of the total 216 Project Manager Is and IIs in the Class, 169 Class

25  Members submitted claims as of November 18, 2009, representing 78% of the PM I and II

26

27  27 Workman Final Approval Decl. ¶ 11.
    28 Workman Final Approval Decl. ¶ 3.
    29 Workman Prelim. Approval Decl. ¶ 21.
28  30 Workman Final Approval Decl. ¶7.
    31 Donly Decl. ¶¶ 16 & 17.

employees.[32]  The high response rate represents 83% of the total workweeks in the class period.[33]
Here, given the facts that no Class Members objected and the overwhelming majority of Class
Members filed claims, the Court can conclude that the settlement is fair, reasonable and adequate.

### 5.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation

One cannot overstate the complexities and duration of further litigation.  As discussed
above, Kaiser asserted substantial and real defenses to this action.  Even if Plaintiffs succeeded on
class certification and at trial, there is little doubt that Kaiser would post a bond and appeal in the
event of an adverse judgment.  A post-judgment appeal by Kaiser would have required many more
years to resolve, assuming the Ninth Circuit affirmed the judgment.  If the Ninth Circuit did not
affirm the judgment in total, then the case could have dragged on for years after the appeal.  The
benefits of a guaranteed recovery today, of the precise remedy that Plaintiffs would seek at trial,
outweigh an uncertain result three or more years in the future.[34]

Both the Plaintiffs and Class Counsel recognize the expense and length of a trial in this
action against Kaiser through possible appeals which could take at least another three years.  Class
Counsel also took into account the uncertain outcome and risk of litigation, especially in complex
actions such as this Action.  Class Counsel are also mindful of and recognize the inherent
problems of proof under, and alleged defenses to, the claims asserted in the Action.  Post-trial
motions and appeals would have been inevitable.  Costs would have mounted and recovery would
have been delayed if not denied, thereby reducing the benefits of an ultimate victory.  Plaintiffs
and Class Counsel believe that the settlement set forth in the Stipulation confers substantial
benefits on the Settlement Class and each of the Settlement Class Members.  Based on their
evaluation, Plaintiffs and Class Counsel determined that the settlement set forth in the Stipulation
is in the best interest of the Class.[35]

Kaiser similarly concluded that settlement of this Action is desirable in the manner and on

---

32 Donly Decl. ¶ ¶ 7 & 15.
33 Donly Decl. ¶ 15.
34 Workman Final Approval Decl. ¶ 12.
35 Workman Final Approval Decl. ¶ 10.

1  the terms and conditions set forth in the Stipulation in order to avoid the expense, inconvenience,

2  and burden of further legal proceedings and the uncertainties of trial and appeals. There can be

3  little doubt that the agreed on settlement of claims is the most efficient and cost-effective method

4  to provide refunds to the members of the Class who are current and former Kaiser employees.

5  **6.**     **The Amount Offered in Settlement**

6      Plaintiffs' damage calculation expert, Class Action Damage Analysis ("CADA"),

7  completed the calculations to determine appropriate compensation to Class Members for the

8  nonpayment of wages. CADA used the mean hourly rate of $30.78 to calculate damages, which

9  corresponds to a mean overtime hourly rate of $46.17 per hour. The class period encompasses

10 13,591 workweeks. One and one-half (1.5) hours per workweek of unpaid overtime for class

11 members equals $941,176.25. Each missed meal break per workweek for class members equals

12 $418,330.98. Each missed rest break per workweek for class members equals $418,330.98.[36]

13     As a result of CADA's damage analysis, Kaiser was subject to claims totaling

14 $1,777,838.71 for the class period for the combination of unpaid overtime, missed meal breaks,

15 and missed rest breaks that were susceptible to records-based proof. The settlement of

16 $1,400,000, before deductions, represents 78% of the subject claims. After deduction of

17 attorneys' fees and costs payment of $420,000, claims administration costs of $25,000, and the

18 Class Representatives' incentive awards of $30,000, the Net Fund Value will equal $925,000,

19 which is 52% of a full recovery, assuming Plaintiffs could prove these amounts at trial.[37] This

20 recovery exceeds the 25% to 35% of the actual estimated loss to the settlement approved in Glass

21 v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476, *13 (N.D. Cal. Jan. 27, 2007).

22 **V.     CLASS COUNSEL'S FEES AND COST AWARD IS PROPERLY
        CALCULATED AS A PERCENTAGE OF THE TOTAL VALUE CREATED
23      FOR THE BENEFIT OF THE CLASS**

24     Plaintiffs request the Court make a final award of attorneys' fees to Class Counsel under

25 the common fund doctrine. The Settlement Agreement authorizes an attorneys' fee award of up to

26 one-third (1/3) of the settlement value. Plaintiffs seek attorneys' fees of only thirty percent (30%)

27

28 36 Workman Prelim. Approval Decl., ¶¶ 18-19.
   37 Id.

1   of the total potential settlement fund of $1,400,000, or $420,000.[38]

2   One can trace the genesis of the common fund doctrine to the United States Supreme Court

3   decision of Central Railroad and Banking of Georgia v. Petus, 113 U.S. 116 (1885), where the

4   Court explained that: "The lawyer who creates a common fund is allowed an extra reward,

5   beyond that which he has arranged with his client, so that he might share the wealth of those upon

6   whom he has conferred a benefit." The Supreme Court never changed this basic pronouncement,

7   outlining that the common fund rule "rests upon the perception that persons who obtain the benefit

8   of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's

9   expense." Boeing v. Van Gemert, 444 U.S. 472, 478 (1980). The Ninth Circuit continues to

10  follow this approach, instructing that "the common fund theory comes from equity. The purpose

11  of this doctrine is to avoid unjust enrichment and to 'spread litigation costs proportionately among

12  all the beneficiaries so that the active beneficiary does not bear the entire burden alone . . . '"

13  Vincent v. Hughes Air West, Inc., 557 F. 2d 759, 769 (9th Cir. 1977).

14  Under the foregoing doctrine, courts recognize that class litigation is necessary to protect

15  the rights of individuals whose injuries and/or damages are too small to economically justify

16  individual representation. In Paul, Johnson, Alston & Hunt v. Gaulty, 886 F.2d 268, 271 (9th Cir.

17  1989), the Ninth Circuit embraced this principle when it stated:

18  Since the Supreme Court's 1885 decision in Central Railroad & Banking Co. of Ga. v.
    Pettus, 113 U.S. 116 (1885), it is well settled that the lawyer who creates a common fund is
19  allowed an extra reward, beyond that which he has arranged with his client, so that he
    might share the wealth of those upon whom he has conferred a benefit. [citation] The
20  amount of such a reward is that which is deemed "reasonable" under the circumstances.

21  In determining a reasonable common fund fee award, courts should consider the fact that

22  attorneys' fees awards serve as an economic incentive for lawyers to bring class action litigation in

23  order to achieve increased access to the judicial system for meritorious claims and to enhance

24  deterrents to wrongdoing. See, A. Conte, Attorney Fee Awards, 2d. Ed., § 104, at 6§§. Without

25  prosecution on a contingent basis and use of the class action mechanism, the courthouse door

26  would effectively be closed to all class members due to the relatively small amount of their

27  individual claims in relation to the enormous time and cost associated with class action litigation.

28  _____

38 Workman Final Approval Decl. ¶¶ 19, 23.

When the Ninth Circuit held that the common fund doctrine was available in ERISA cases, the court echoed the foregoing sentiment:

> Having determined that risk multipliers remain available in common fund cases after <u>Dague</u>, we further note that we have held, in a pre-<u>Dague</u> case, that a risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for their services . . . Moreover, we have observed that the need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.'

<u>Florin v. Nations Bank of Georgia</u>, 34 F.3d 560, 564 (9th Cir. 1994).

When Plaintiffs filed this action, it was "inescapably contingent." Further, the result was by no means guaranteed. Effective prosecution of this case was founded on the risky, contingent investment of time and expense.[39]

## A.    **Evolution of the Percentage Method**

Ever since the common fund doctrine found its genesis in <u>Petus</u>, courts have awarded attorneys' fees on a percentage basis. In arriving at a reasonable percentage fee award, courts consider a variety of factors but focus on the particular circumstances of the case in fixing a percentage above or below a "benchmark." During the late 1960s and early 1970s following the 1966 amendments to Rule 23, the size of settlement funds began increasing significantly and the attorneys' fees awarded pursuant to the percentage method, usually taken out of context, were criticized by commentators and the general press. Then, in 1973, that year's revision for the <u>Manual for Complex Litigation</u> (Herr, §147) proposed that courts base all common fund fee awards on "time reasonably expended on the action." The courts in <u>Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San. Corp.</u>, 487 F.2d 161 (3d Cir. 1973) ("Lindy I") and <u>Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San. Corp.</u>, 540 F.2d 102 (3d Cir. 1976) ("Lindy II"), embraced this concept. Thereafter, many courts adopted <u>Lindy's</u> rationale, and courts generally began awarding fees based on the actual time expended (the lodestar). <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67 (9th Cir. 1975). As time passed, however, and this approach forced already overburdened courts to wade through voluminous and often indecipherable time records, it became evident that utilization of the lodestar method had reached a point of diminishing returns.

---

39 Workman Final Approval Decl. ¶ 18.

1   This approach also created a disincentive for cases to settle early.  As the court observed in In re

2   Activision Securities Litigation, 723 F. Supp. 1373, 1375 (9th Cir. 1989):

3           The question this court is compelled to ask is, 'Is this process necessary?'  Under a cost-
            benefit analysis, the answer would be a resounding, 'No!'  Not only do the Lindy, Kerr,
4           and Johnson analyses consume an undue amount of court time with little resulting
            advantage to anyone, but, in fact, it may be to the detriment of the class members.  They
5           are forced to wait until the court has done a thorough, conscientious analysis of the
            attorneys' fee petition.  Or, class members may suffer a further diminution of their fund
6           when a special master is retained and paid from the fund.  Most important, however, is the
            effect the process has on the litigation and the timing of settlement.  ***Where attorneys must***
7           ***depend on a lodestar approach, there is little incentive to arrive at an early settlement.***
            (Emphasis added.)
8

9           In Williams v. MGM-Pathe Communs. Co. 129 F.3d 1026 (9th Cir. 1997), the Ninth

10  Circuit confirmed that the percentage method governs attorney fee awards in common fund cases.

11  Williams held that courts should calculate the percentage award based on the total value of the

12  common fund not just the amount claimed by class members because, under Boeing Co. v. Van

13  Gemert, 444 U.S. 472, 478 (1980), "attorneys for a successful class may recover a fee based on the

14  entire common fund created for the class…"  129 F.3d at 1027.

15          Given the foregoing, courts now reject the lodestar approach.  This trend recognizes the

16  fact that compensating class counsel in class litigation on a percentage basis (common fund)

17  makes good sense because (1) it is consistent with the private marketplace where clients

18  customarily compensate contingent fee attorneys on such a basis; (2) it aligns the interests of class

19  counsel and absent class members in achieving the maximum possible resolution of the case; and,

20  (3) it augers for the most efficient and expeditious resolution of the litigation by providing an

21  incentive for early, yet reasonable, settlement.  Class Counsel respectfully submit that this Court

22  should award in this case attorneys' fees on a percentage basis equal to 30% of the settlement

23  fund.

24          **B.      The Award is Supported By:  1) The Results Achieved; 2) The Risk; 3)
                      The Skill Required; 4) The Contingent Nature of the Fee; and, 5)**
25          **Awards In Similar Cases**

26          What has now emerged in most fee award decisions is a recognition that attorneys' fee

27  determinations in both common fund and statutory fee situations are incapable of mathematical

28  precision because of the intangible factors that must be resolved in the court's discretion based on

APPLICATION FOR FINAL APPROVAL          -17-          3169\SETTLEMENT\FINALAPPMOT.DOC

1  the circumstances of each particular case.  See, A. Conte, Attorney Fee Awards, 2d Ed., § 207, at

2  44.  In determining an appropriate attorneys' fee in a common fund case, the Court must decide,

3  based on the unique posture of each case, what percentage of the common fund would most

4  reasonably compensate Class Counsel given the nature of the litigation and the performance of

5  counsel.  Paul, 886 F.2d at 272 (holding the court may adjust the benchmark percentage to account

6  for the circumstances involved in a particular case).  Courts apply a five-part test in calculating a

7  reasonable percentage fee in common fund cases:  (1) the results achieved; (2) the risk of

8  litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the

9  financial burden carried by the plaintiffs; and, (5) awards made in similar cases.  In re Omnivision

10  Technologies, Inc., 559 F. Supp. 2d 1036, 1040-41 (N.D. Cal. 2007).  Here, each of these five

11  factors strongly support an award of the percentage fee (30%) requested.

12  ### 1.   The Results Achieved

13      "The overall result and benefit to the class from the litigation is the most critical factor in

14  granting a fee award."  Omnivision, 559 F. Supp. 2d at 1046.  See also In re Heritage Bond Litig.,

15  U.S. Dist. LEXIS 13627, at *27-28 (C.D. Cal. June 10, 2005).  Class Counsel obtained an

16  outstanding result in this case for the Class Members.  The Settlement provides monetary benefits

17  to the Class Members that are superior to those recovered in similar overtime wage class actions.

18  The Settlement is particularly advantageous to the Class Member because the proceeds will be

19  distributed shortly as opposed to waiting additional years for a similar, or possibly, less favorable

20  result.

21      There is little question that the result achieved in this litigation is excellent.  The absence

22  of any objection to either the settlement or the attorneys' fee request from any of a total of 216

23  Class Members bears this out.[40]  Indeed, the approval of the Class is overwhelming as indicated

24  from their participation in the settlement:  to date, Class Members claimed over 83% of the

25  workweeks available in the settlement.[41]  The average Class Member's recovery is approximately

26

27

28  ---
40 Donly Decl. ¶¶ 16-17.
41 Donly Decl. ¶ 15.

1  $4,783.66, with the highest recovery being $14,780.45. These sums exceed most Class Members'

2  expectations and are amounts that will make a real impact on their lives.[42]

3      The Class Members also received a substantial benefit as the result of the relatively early

4  settlement of this action both in terms of receiving the settlement proceeds much sooner and

5  avoiding the risk of receiving nothing at all. See Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS

6  8476, *47-48 (N.D. Cal. Jan. 27, 2007) ("The early settlement of the instant action resulted in

7  significant benefit to the class…. Class counsel achieved an excellent result for the class members

8  by settling the instant action promptly.")

9                    **2.    Risks of Litigation**

10     "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a

11 case involving complicated legal issues, is a significant factor in the award of fees." Omnivision,

12 559 F. Supp. 2d at 1046-47.

13     Kaiser's numerous defenses to the case created difficulties with proof and complex legal

14 issues for Class Counsel to overcome. As stated, Kaiser contended that it properly classified all

15 Class Members as exempt under the administrative exemption, claiming that the work Class

16 Members performed was directly related to management or general business operations within the

17 meaning of the language set forth in both Industrial Welfare Commission Wage Order 4-2001, 8

18 Cal. Code Regs. section 11040 tit. 8, subd. 1(A)(2), 29 U.S.C. section 213(a)(1), and 29 C.F.R.

19 sections 541.201, 541.203, and 541.402. Some courts hold that information technology workers,

20 like Plaintiffs and Class Members here, are exempt under the administrative exemption. See

21 Heffelfinger v. Elec. Data Sys. Corp., 580 F. Supp. 2d 933, 958-966 (C.D. Cal. 2008). Kaiser

22 made the additional argument that it properly classified some Class Members as exempt under the

23 executive exemption, as set forth in 8 Cal. Code Regs section 11040 tit. 8, subd. 1(A)(1) and 29

24 U.S.C. section 213(a)(1), creating problems both for class certification and for Plaintiffs'

25 assertions that all Class Members worked overtime without receiving overtime wages. The court

26 in Dunbar v. Albertson's, Inc., 141 Cal. App. 4th 1422, 1431-32 (2006), affirmed an order denying

27 class certification to a class of employees who claimed that their employer denied them overtime

28

---

42 Workman Final Approval Decl. ¶ 4.

1   pay, holding that the issue of whether the executive exemption applied would have to be

2   individually determined for each class member.  Kaiser also asserted that class treatment would be

3   inappropriate because the Court would need to make individual inquiries into each Class

4   Member's job duties and hours worked.

5           All of Kaiser's defenses were substantial, and any of them could have resulted in the Class

6   receiving nothing if the parties litigated the claims.  Here, there was certainly a risk that the Court

7   would have adopted one or all of Kaisers arguments and denied class certification, particularly

8   given this Court's view regarding certification of classwide meal period claims.  See Perez v.

9   Safety-Kleen Systems, Inc., 253 F.R.D. 508, 512-515 (N.D. Cal. 2008).[43]

10          All of these risks were substantial, any one of which could have resulted in the Class

11  receiving nothing if the parties litigated the claims.

12                          **3.      The Skill Required and the Quality of Work**

13          Practice in the narrow area of wage and hour class action litigation requires skill,

14  knowledge and experience in two distinct subsets of the law.  Expertise in one does not necessarily

15  translate into expertise in the other.  Class Counsel must have expertise in both.  The issues

16  presented in this case required more than just a general appreciation of wage and hour law and

17  class action procedure as this area of practice is still developing as evidenced by the Supreme

18  Court's recent rulings in Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094 (2007)

19  (holding that payments under Labor Code § 226.7 are a wage, not a penalty) and in Arias v.

20  Superior Court, 40 Cal. 4th 969 (2009) (holding that Labor Code claims brought under the

21  California Private Attorneys General Act do not require certification as class actions).[44]

22          The Settlement was possible only because Class Counsel were able to convince Kaiser that

23  Plaintiffs could potentially prevail on the difficult legal issues regarding overtime compensation

24  and meal and rest periods, achieve class certification, overcome difficulties in proof as to

25  monetary relief, and take the case to trial if need be, as exemplified by the foregoing.[45]

26

27

28  43 Workman Final Approval Decl. ¶ 14.
    44 Workman Final Approval Decl. ¶ 16.
    45 Workman Final Approval Decl. ¶ 17.

1    In successfully navigating these hurdles, Class Counsel displayed the necessary dual skill

2  set. The high quality of the Class Counsel's work in this case was mandated by the vigorous and

3  contentious defense presented by counsel for Kaiser. This action required Class Counsel to invest

4  substantial time and resources in investigation, formal and informal discovery, calculation of

5  potential damages, and communicating with and responding to opposing counsel's and class

6  members' requests, demands, and inquiries.[46]

7    The contingent fee practice of Class Counsel does not accommodate the investment of

8  unnecessary time in a case. Class Counsel practice in a small firm comprised of two partners and

9  one associate. Class Counsel litigated this case on a contingent basis with all of the concomitant

10  risk factors inherent in such an uncertain undertaking.[47] Because of the size of their firm, Class

11  Counsel had to devote substantial resources to the litigation of this case. On account of the

12  concerted and dedicated effort this case demanded in order to properly handle and prosecute, Class

13  Counsel were precluded from taking other cases, and in fact, had to turn away meritorious fee

14  generating cases.[48]

15    **4.    The Contingent Nature of the Fee and the Financial Burden**

16    There is a substantial difference between the risk assumed by attorneys being paid by the

17  hour and attorneys working on a contingent fee basis. The attorney who is paid by the hour can go

18  to the bank with his fee. Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000). The attorney

19  working on a contingent basis can only log hours while working without pay toward a result that

20  will hopefully entitle him or her to a marketplace contingent fee taking into account the risk and

21  other factors of the undertaking. Id. at 1257. Otherwise, the contingent fee attorney receives

22  nothing. Id.

23    Counsel retained on a contingency fee basis, whether in private matters or in class action

24  litigation, are entitled to a premium beyond their standard, hourly, non-contingent fee schedule in

25  order to compensate for both the risks and the delay in payment. The simple fact is that despite

26  the most vigorous and competent of efforts, success is never guaranteed. McKittrick v. Gardner

27

28  46 Workman Final Approval Decl. ¶ 17.
    47 Workman Final Approval Decl. ¶ 18.
    48 Workman Final Approval Decl. ¶ 18.

APPLICATION FOR FINAL APPROVAL        -21-        3169\SETTLEMENT\FINALAPPMOT.DOC

1   378 F.2d 872, 875 (4th Cir.1967). The failure to adequately compensate counsel for the risks

2   inherent in difficult class actions, will discourage competent attorneys from prosecuting similar

3   cases. Steiner v. BOC Financial Corp., 1980 U.S. Dist. LEXIS 14561, *6-7 (S.D.N.Y. 1980).

4       In this case, Class Counsel subjected themselves to this contingent fee market risk in this

5   all-or-nothing contingent fee case where the necessity and financial burden of private enforcement

6   makes the requested attorneys' fee award appropriate.[49] Here, the contingent nature of the

7   attorneys' fee award, both from the point of view of eventual settlement and the point of view of

8   establishing eligibility for an award, also warrant the requested award. A number of difficult

9   issues existed, the adverse resolution of any one of which could have doomed the successful

10  prosecution of the action. As discussed above, attorneys' fees in this case were not only

11  contingent but also risky, with a real chance that Class Counsel would receive nothing at all for

12  their efforts.

13      This litigation also required Class Counsel to advance all costs. Where corporate

14  defendants and their attorneys are well funded, as is typical in this practice area, this type of

15  litigation can prove to be expensive and risky. Accordingly, because the risk of advancing costs in

16  this type of litigation is significant, doing so is therefore cost prohibitive to many attorneys.[50] The

17  financial burdens undertaken by Plaintiffs and Class Counsel in prosecuting this action on behalf

18  of the Class were substantial. To date, Class Counsel advanced a total of $21,660.83 in costs that

19  they could not recover without a favorable outcome.[51] Plaintiffs further undertook the risk of

20  liability for Kaiser's costs and fees had this case not succeeded, as well as other potential negative

21  financial ramifications from having come forward to sue Kaiser on behalf of the Class. The

22  contingent nature of the fee and the financial burdens on Class Counsel and Plaintiffs also support

23  the attorneys' fee requested.

24      **5.**    **Awards in Similar Cases**

25      The attorneys' fees requested by Class Counsel are within the range of fees awarded in

26  comparable cases. Courts historically award fees in the range of 20% to 50% of the common

27

28  49 Workman Decl. ¶18.
    50 Workman Decl. ¶5.
    51 Workman Final Approval Decl. ¶ 5.

fund, depending on the circumstances of the case.  In re Warner Communications Sec. Lit., 618 F.

Supp. 735, 749-50 (S.D. N.Y. 1985).  Professor Newberg is in accord:

> No general rule can be articulated on what is a reasonable percentage of a
> common fund.  Usually 50% of the fund is the upper limit on a reasonable fee
> award from a common fund in order to assure that the fees do not consume a
> disproportionate part of the recovery obtained for the class, although somewhat
> larger percentages are not unprecedented.

Newberg, Newberg on Class Actions, 3rd Ed., § 14.03, at 14-13§§.  Class Counsel

consistently obtain attorneys' fee awards in the 30-33% range:  Dellmore v. Toys "R" Us, et al.,

Alameda County Superior Court, Case No. RG-07-306616, (filed May 30, 2008) (awarding 30%

for a settlement that occurred well before trial); Dudash v. Varnell Struck, et al., United States

District Court, Central District, Case No. C-04-02748 MHP, (filed June 27, 2008) (awarding 30%

in a settlement that occurred prior to summary judgment hearing); Byrd v. Autotrader Publishing,

et al., San Francisco Superior Court, Case No. CGC 07-463062 (filed March 21, 2008) (awarding

33% in a settlement that occurred before any formal depositions taken); Righetti v. Inside Track,

Inc., San Francisco Superior Court, Case No. CGC 06-456053 (filed April 11, 2008) (awarding

30% in settlement reached prior the hearing on summary judgment motions); Wright v.

Centerplate, Inc., Alameda County Superior Court, Case No. RG07356589 (filed June 26, 2009)

(awarding 30% for a settlement that occurred well before trial).[52]

In similar federal and state cases involving overtime class actions, the courts routinely

award fee requests of 30% or more.  On November 14, 2007, Judge Beck awarded attorneys fees

of one-third (1/3) the settlement amount in Romero v. Producers Dairy Foods, Inc., 2007 U.S.

Dist. LEXIS 86270 (E.D. Cal. Nov. 14, 2007).  On August 25, 2008, in Woo v. Home Loan

Group, L.P., Judge Huff awarded a 33% fee request in an overtime class action.  2008 U.S. Dist.

LEXIS 65144 (S.D. Cal. Aug. 25, 2008).  On February 2, 2009, Judge Conti granted a 30% fee

award to counsel in Knight v. Red Door Salons, Inc., 2009 U.S. Dist. LEXIS 11149 (N.D. Cal.

Feb. 2, 2009).  On November 12, 2008, in Connell v. Sun Microsystems, Alameda County

---

52 Workman Final Approval Decl. ¶ 20.

1   Superior Court, Case No. RG06252310 (filed Nov. 12, 2008), Judge Brick awarded a 30% fee

2   request in an overtime class action.[53]

3        Viewed in the light of the work performed, the requested attorneys' fee award of 30% is

4   reasonable, justified, and within the range of that awarded by other courts.  No Class Member

5   objected to the fee request.[54]

6        **C.     Class Counsel's Expenses Are Reasonable**

7        As part of the agreement, the parties agreed that Class Counsel shall seek recovery

8   separately for their actual litigation costs.  Class Counsel requests reimbursement for expenses and

9   costs in the amount of $21,660.83.  These expenses include the amounts paid for service of

10  process, expert fees, mediator fees, legal research charges, court fees and delivery charges.  These

11  costs were reasonably incurred in the prosecution of this matter.[55]

12       **D.     The Class Representatives Should Receive the Requested Service**
             **Awards**
13

14       Enhancement payments to class representatives are appropriate to compensate for the level

15  of risk, time spent, and efforts undertaken on behalf of the class.  Manual, § 30.42 at p. 763.

16  Courts approve enhancement payments for this purpose.  Ingram v. The Coca-Cola Co., 200

17  F.R.D. 685, 694 (N.D. Ga. 2001).  See, e.g., Van Vranken v. Atlantic Richfield Co., 901 F. Supp.

18  294 (N.D. Cal. 1995) (incentive award of $50,000); In re Dun & Bradstreet Credit Servs.

19  Customer Litig., 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $ 55,000, and three

20  incentive awards of $ 35,000); Brotherton v. Cleveland, 141 F.Supp.2d 907, 913-14 (S.D. Ohio

21  2001) (granting a $50,000 service award); Enter. Energy Corp. v. Columbia Gas Transmission

22  Corp., 137 F.R.D. 240 (S.D. Ohio 1991) ($50,000 awarded to each class representative); Glass v.

23  UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476, *51-52 (N.D.Cal. Jan. 27 2007) (awarding $25,000

24  service award in FLSA overtime wages class action); Cook v. Niedert 142 F.3d 1004, 1016 (7th

25  Cir. 1998) (affirming $25,000 service award to class representative in ERISA case).

26

27

28
---
53 Workman Final Approval Decl. ¶ 21.
54 Workman Final Approval Decl. ¶ 23.
55 Workman Final Approval Decl. ¶ 5.

1  Plaintiffs request that the Court award each Class Representative, Plaintiffs Michelle Mike,

2  Paris Hill, and Michael Williams, a $10,000 enhancement award.  Kaiser agreed to the payment of

3  these service awards to the Plaintiffs.  As the Representatives of the Class, Plaintiffs performed

4  their duties to the Class admirably and without exception.  Plaintiffs provided valuable documents

5  from their employment at Kaiser which were instrumental in Class Counsel's understanding of the

6  case.  Plaintiffs put Counsel in contact with other class members in an effort to gather evidence for

7  use at certification.  Plaintiffs also responded to numerous requests and correspondence from

8  Class Counsel.[56]  Plaintiffs' efforts in bringing the lawsuit conferred a substantial benefit on 169

9  class members.  No Class Member objected to the enhancement awards.[57]  These militate in favor

10 of granting the request.

11 **VI.   CONCLUSION**

12 For the reasons stated, Plaintiffs respectfully request that the Court grant final approval of

13 the class settlement, approve Plaintiffs' request for attorneys' fees of $420,000 and costs of

14 $21,660.83, and approve Plaintiffs' request for an award of incentive payments in the amount of

15 $10,000 to Plaintiffs Mike, Hill, and Williams.

16

17

18 DATE: November 18, 2009                     QUALLS & WORKMAN, L.L.P.

19

20                                                    By: _____

21                                                        Robin G. Workman
                                                         Attorneys for Plaintiffs

22

23

24

25

26

27

28 ─────────────────────────
   56 Workman Final Approval Decl. ¶ 24.
   57 Id.